## GLADNEY et al., Appellants, v. SYDNOR et al.

### Division Two, February 24, 1903.

1. **Retrospective and Ex post Facto Laws.** The clause in the Constitution which prohibits the enactment of a law "retrospective in its operation" relates to civil rights and proceedings in civil causes. The same clause in so far as it prohibits an "ex post facto law" has special application to criminal cases.

2. **Retrospective Laws:** VESTED RIGHTS. Laws are not to be considered retrospective unless they impair civil rights that are vested.

3. ————: HOMESTEAD: LAW OF 1895: VESTED RIGHT IN HUSBAND. The right of the husband, who acquired his homestead prior to the enactment of the law of 1895, to sell the homestead, subject to the wife's inchoate right of dower, without the wife joining in the deed, except where the wife had filed her claim as provided by statute, is a vested right, and, hence, the statute of 1895, in so far as it applies to homesteads acquired by the husband prior to its enactment, is retrospective.

4. **Homestead:** DEED BY HUSBAND ALONE. The homestead statute of 1895, debarring the husband from alone "selling or mortgaging the homestead" and making him incapable of in anywise alienating it without his wife joining in the conveyance. did not prohibit a husband in 1897, without his wife joining in the deed, from conveying a homestead acquired by him prior to the passage of the Act of 1895, unless the wife had filed her claim thereto as provided by statute.

5. ———: ——: WIFE'S FILING OF CLAIM. The husband's vested right to convey his homestead without his wife joining in the instrument is not in any way interfered with by the fact that his wife can at any time file her homestead claim as provided by statute and thereby nullify his vested right to convey. His right to convey is vested, but the duration of the right is optional with the wife, and under the Constitution, unless she exercises her option,-the Legislature can not step in and exercise it for her.

6. **Vested Right**: IMPAIRMENT. To take away from one a vested right to convey is to impair that right. And a law which undertakes to take away that right is in violation of the Constitution.

7. ———: EXERCISE. A failure to exercise a vested right before the passage of a subsequent statute which seeks to divest it, in no wise affects or lessens that right.

8. **Homestead**: STATUTE OF 1895. The homestead statute of 1895 can operate only prospectively and is not to be applied to husbands who had acquired homesteads prior to the enactment of the statute.

9. **Retrospective Law**: EXTENT OF APPLICATION: REMEDY. A law intended simply to change the remedy or procedure, if it in fact impairs vested rights, is just as obnoxious to the Constitution as it would be if in the clearest terms it violated the constitutional inhibition.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*Norton, Avery and Young* for appellants.

(1) Defendant contends first, that as the land exceeded 160 acres in quantity and $1,500 in value, therefore the provisions of a homestead were not attached, and Gladney would have a right to convey alone. It seems to us that this contention of defendant is not well founded, and that a head of a family occupying a tract of land in which the homestead is embraced, the whole tract is impressed with the beneficent provisions surrounding and guarding a homestead, until the homestead itself has by some process been separated from

the body of land.    This seems to us to be the doctrine
very plainly laid down in Macke v. Byrd, 131 Mo. 682,
and Creech v. Childers, 156 Mo. 338.    (2)    The exist-
ing law, as it existed from 1884 to the time of the con-
veyance, taken in connection with the law that was in
force in 1897 at the time of the conveyance, as amended
by the Legislature of 1895, gave to George W. Gladney
no right or authority or power, without being joined
by his wife, to make this conveyance, sought to be en-
joined.    The law as it existed prior to 1895 gave the
wife a certain remedy by which she might claim this
homestead, and made any conveyance of it by her hus-
band without her joining, null and void.    In other words
from 1884 to 1895 the Legislature gave to the head of the
family a homestead in this class of property not to ex-
ceed 160 acres in quantity or $1,500 in value, and the
statute, being section 5435, Revised Statutes 1889, pro-
vided how this remedy could by the wife be enforced
under the provisions of that section, by filing with the
recorder of deeds her claim to the tract or lot of land
occupied by her and her husband, or by her if abandoned
by her husband, claiming the same as a homestead and
having the same recorded, and after she had filed this
claim the conveyance by her husband either by deed
of trust or otherwise, would have been null and void.
This was the remedy of the wife to protect her home-
stead.    The Legislature of 1895 amended this section,
but in the amendment she still had the same rights as
she had in section 5435, but it did change her remedy
and that was all.    Instead of requiring her, in order
to make the husband's conveyance void, to file her claim,
it relieved her of this burden and made the conveyance
by the husband of the homestead absolutely void, unless
the wife joined with him, and it appears to us that it was
only a change in the remedy and not in the law itself;
under the laws that existed under section 5435 the hus-
band did not have a vested interest absolutely to con-
vey without his wife joining.    The law in its beneficence
provided for the wife and the family, but under its pro-
visions it required of the wife certain acts.    As amended

the law in the same way and to the same extent guarded
the wife and family against the conveyance of the home-
stead by the husband, but relieved the wife of certain
acts theretofore required, i. e., it relieved her of the
burden of filing her claim with the recorder of deeds.
Schuermann v. Ins. Co., 165 Mo. 641; Railroad v. Curd-
more, 13 Mo. 634; Golden City v. Hall, 68 Mo. App. 627.

*Martin & Woolfolk* for respondents.

(1)   Under the homestead law of this State prior to
the amendment of 1895, George W. Gladney, as the
owner of the land and the head of the family, had the
right to sell or incumber, without the wife joining with
him, except where the wife had filed her claim, as pro-
vided by section 5435, Revised Statutes 1889, and the.
effect of such conveyance by the husband was to divest
the wife of all interest except dower.   Tucker v. Wills,
111 Mo. 399; Greer v. Major, 114 Mo. 145; Kopp v.
Blessing, 121 Mo. 398.   (2)   The right of George W.
Gladney to sell or incumber was a vested right.   Gil-
more v. Bright, 7 S. E. 751.   The right to do certain
actions or possess certain things according to the law
of the land, is a vested right.   Calder v. Bull, 3 Dall.
(U. S.) 386; 6 Am. and Eng. Ency. Law (2 Ed.), 956;
Leete v. Bank, 115 Mo. 184; Arnold v. Willis, 128 Mo.
145.   (3)   The right of George W. Gladney to incum-
ber the land being a vested right, it could not be taken
away by the Act of 1895.   Leete v. Bank, 141 Mo. 574;
Bartlett v. Ball, 142 Mo. 28; Clay v. Mayr, 144 Mo. 380;
Cranor v. School Dis., 151 Mo. 125; In re Flukes, 157
Mo. 131.

FOX, J.—This was an action commenced by the
appellants in the Lincoln Circuit Court, on October 3,
1899, to enjoin a sale, under a certain deed of trust, and
to cancel and hold for naught said deed.

The petition contains substantially the following
allegations:  "1.   Clemanda Gladney, the real plain-

tiff, stated that she was, and since 1859 had been, the wife of the her co-plaintiff, George W. Gladney; that Thomas G. Sydnor was the sheriff of Lincoln county, Missouri; that the land described in the petition, consisting of 173.74 acres, had been owned and occupied by George W. Gladney as a homestead for a great many years, all of it since 1884, and that during all that time plaintiff and George W. Gladney, as husband and wife, had owned and occupied the same as a homestead; that on May 25, 1897, George W. Gladney, without the knowledge and consent of plaintiff, Clemanda Gladney, his wife, executed and delivered to George O. Hamilton, trustee, for the use and benefit of Ellen E. Wilson, a deed of trust, securing a note made payable to Ellen E. Wilson; that Clemanda Gladney, as the wife of George W. Gladney, did not join with George W. Gladney in the execution of said deed of trust, and that said deed of trust was on the land in plaintiff's petition described, being the 173.74 acres composing and comprising the homestead of George W. Gladney and Clemanda Gladney at that time; that the note described in said deed of trust was due; that George O. Hamilton, as trustee, had refused to act, and that defendant, Thomas G. Sydnor, the then sheriff of Lincoln county, Missouri, under the provisions of said deed of trust, had the land advertised and was threatening the sale of same.

"Plaintiff Clemanda Gladney further stated that since May 25, 1897, to-wit, the 21st day of March, 1899, the title to said land had been conveyed to her through mesne conveyance from George W. Gladney; that she, Clemanda Gladney, was now the sole owner of said land; that the deed of trust given by George W. Gladney to George O. Hamilton, trustee, was, under the laws as they now exist in the State of Missouri, absolutely void; but that if Thomas G. Sydnor was permitted to sell and make a deed thereto, it would cast a cloud over her title to the land, and that the deed of trust itself made by George W. Gladney, then on record, cast a cloud over her title. She therefore prayed for a judgment and decree of the court enjoining

Thomas G. Sydnor, the acting trustee, from selling said land, and enjoining Ellen E. Wilson from attempting to carry into execution the said deed of trust made by George W. Gladney, and praying the court to cancel and hold for naught the said deed of trust.

"This petition was filed in the circuit court of Lincoln county, Missouri, and the court not being in session, and no judge of the circuit court being in the county, a temporary injunction was issued on October 3, 1899, by the probate court of the county.

"In the circuit court, Ellen E. Wilson filed a separate answer, in substance as follows:

"Admitting that plaintiffs were husband and wife; admitting that George W. Gladney alone executed the deed of trust complained of on May 24, 1897, and admitting the record of the deed of trust as charged in the petition. Denied the use of the land as a homestead; denied that Clemanda Gladney had become the bona fide owner of any portion of the land since the execution of the deed of trust; charges that if Clemanda Gladney had obtained the title to any portion of the land from George W. Gladney the same was without consideration, and the same was to defraud his creditors, and especially this defendant; admitted that defendant Sydnor was the sheriff of Lincoln county, Missouri, and had the land advertised for sale under the terms of said deed of trust, and denying each and every allegation in the petition; and further answering, alleging that the deed of trust complained of was made to secure an indebtedness created by George W. Gladney prior to June 21, 1895, and alleging that up to the time of making said deed of trust George W. Gladney owned the land described therein, consisting of 173.74 acres, in his own right, which was then of the value of $4,000; alleged that Gladney owned the land prior to June 21, 1895, and as such owner and head of a family had and possessed a vested right and power unrestricted by any act or deed or declaration of the said Clemanda Gladney, made or executed by her prior to the making of said deed of trust, to convey, alienate or incumber the same,

whether said land, or any part thereof, was a home-stead or not, and that in the exercise of said right George W. Gladney made said deed of trust.

"Defendant Sydnor answered, stating that he was sheriff of Lincoln county, and at the request of defendant Ellen E. Wilson advertised the land for sale under the power of said deed of trust made by George W. Gladney to George O. Hamilton, trustee, said Hamilton having refused to execute said trust; and further answering said he had no knowledge or information as to the other allegations in plaintiffs' petition.

"Plaintiffs' reply to the separate answer of Ellen E. Wilson was a general denial of all new matter therein contained. Defendant then filed a motion to dissolve the temporary injunction granted by the probate court."

Upon the trial of this cause, the court sustained the motion to dissolve the injunction and dismissed plaintiffs' bill. From this judgment, this cause is brought here for review.

There is no dispute as to the testimony in this cause. It substantially appears from the evidence introduced that appellants were husband and wife and had for many years been occupying the land in dispute, and were residing upon it at the time of the execution of the deed of trust, in May, 1897. All the land involved in this suit was procured by the appellant, George W. Gladney, prior to 1884, and he and his wife were occupying it continuously since 1884. Prior to June 21, 1895, George W. Gladney borrowed two sums of money from the respondent, Ellen E. Wilson, giving her two notes therefor. On May 24, 1897, these two notes had not been paid, and amounted to $428.67. George W. Gladney, on that day, May 24, 1897, took up the two old notes and executed to Mrs. Wilson one note, including the aggregate amount of the old notes, and to secure the payment of the renewed note, executed the deed of trust which is the subject of this suit. The appellant, Clemanda Gladney, wife of George W. Gladney, did not join with her husband in the execution of this deed of trust. It further appears that subsequent to the execu-

tion of the deed of trust by George W. Gladney, he and his wife, on March 21, 1899, executed a deed, conveying this same land (except ten acres) to O. H. Avery, and on the same day O. H. Avery and wife conveyed the same land conveyed to him by George W. Gladney and wife, to Clemanda Gladney. It is also disclosed by the record in this case, that the land embraced in the deed of trust far exceeded the value of the "*homestead*," as defined by the statute. It is practically admitted that the deed from George W. Gladney and wife to O. H. Avery, was a voluntary conveyance and without consideration. This is a sufficient reference to the testimony, in order to indicate the vital questions involved in the controversy.

Under the well-settled law of this State, prior to the enactment of the statute of 1895, it is beyond dispute that the husband could sell or incumber the homestead, subject to the wife's inchoate right of dower, without the wife joining with him, except where the wife had filed her claim as provided by section 5435, Revised Statutes 1889. This was clearly announced and determined in the cases of Greer v. Major, 114 Mo. 145; Tucker v. Wells, 111 Mo. 399; Kopp v. Blessing, 121 Mo. 391, and Markwell v. Markwell, 157 Mo. 326. In 1895, the Legislature materially altered and changed the rights of the husband, in respect to his right to incumber or sell the homestead. [Laws 1895, p. 185.] This change is embraced in these words: "*The husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void.*"

If we concede that this was a *homestead* as contemplated by the statute, which the husband was debarred from and incapable of selling or incumbering, notwithstanding it far exceeded the value of the homestead defined by the statute, then there is only one question before us for determination, and that is, was the right of the husband prior to 1895, to sell and incumber the homestead without the wife joining with him, such a

vested right as the Act of 1895 could not deprive him, of ? This leads us to the investigation of this all-important question. It is not only a very important one, but equally as interesting, for it is the first time this question has been presented under this marked change in the statute.

Vested rights may be created either by the common law, by statute or by contract, and it makes no difference as to the method of their creation; they are entitled to the same protection. If, in this case, the right of appellant, George W. Gladney, to convey his homestead, prior to the Act of 1895, without his wife joining with him in such conveyance, was a vested right, it becomes so by the operation of law, and is entitled to the same protection under the Constitution and laws of the land, as though it had been created by contract. A vested right was defined in the case of Marshall v. King, 24 Miss. 85, to be "an immediate fixed right of present or future enjoyment." In the case of Calder v. Bull, 3 Dall. (U. S.) 386, CHASE, J., says: "When I say that a right is vested in a citizen, I mean, that he has the power to do certain actions or to possess certain things, according to the law of the land." Judge STORY, in the case of Society v. Wheeler, 2 Gall. 105, held that "upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." Article 2, section 15 of the Constitution of Missouri, provides "that no *ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation,* or making any irrevocable grant of special privileges or immunities, can be passed by the General Assembly." The reference in this provision to *ex post facto* laws, has special application to criminal cases; but the subdivision of this constitutional provision, which is intended to protect every citizen against the impairment of vested rights is that inhibition against the passage of laws retrospective in their operation. The terms "retrospective in their operation" as used in our Bill of

Rights is one which relates to civil rights and proceedings in civil causes (Ex parte Bethurum, 66 Mo. l. c. 549) hence the well-settled rule deduced from all the authorities is that ''acts of the Legislature are not to be considered as retrospective, unless they impair rights that are vested, because most civil rights are derived from public laws.'' [Rich v. Flanders, 39 N. H. 321, and cases cited and discussed.]

In view of this principle we are led to the conclusion that an additional question must be answered in this investigation. The first inquiry in this case is, was the right of George W. Gladney to convey or incumber his homestead without his wife joining in such conveyance, a *vested right,* and as such, could it be impaired by the Act of 1895?

The second inquiry is as to the Act of 1895. Is it to be construed simply as *prospective* in its operation, or if it is intended to be retrospective, then is it not in conflict with the Constitution of this State, as quoted herein?

It is clear that if George W. Gladney had a vested right in dealing with his homestead prior to 1895, then if the Act of 1895 is intended to impair that right, it would truly be retrospective in its operation.

As to the first proposition, we have reached the conclusion that the appellant George W. Gladney, had a vested right, in respect to conveying and incumbering his homestead, prior to the Act of 1895, and that act can not impair such right. To us it seems as one of the highest privileges and dearest rights that can be bestowed upon the citizen. The law that creates the right to deal with your property without compelling you to have someone unite with you in the conveyance, truly confers an inestimable privilege. This land was his, and beyond question he had the right to convey it (subject to her inchoate right of dower) prior to the Act of 1895, without having his wife join with him in the deed. The fact that his wife could file her claim as provided in section 5435, Revised Statutes 1889, heretofore referred to, does not change the rule so far as being a

vested right. The right to convey was clearly given him and the law provided the method how he could be barred of that right, and that was a personal privilege vested in the wife, a right she could exercise or refuse to exercise. The law that created the homestead also created a right in the wife, by which she could divest the husband of his right to sell or incumber it; but this by no means contemplated that the Legislature could by enactment, bar or impair the right given the husband, in respect to his property. It may be said by appellants that this right to convey was merely conditional upon the failure of the wife to file her claim under the statute; the right to convey was not conditional, it was vested; its duration was optional with the wife. This does not alter or change the principle that the Legislature can not by a law, retrospective in its operation, impair vested rights; it has no more power under the Constitution to impair this right than it has to impair rights that are not subjected to any limitation as to its duration. No one under the law had the right to impair or interfere with his right of alienation, except his wife, and the Legislature can not step in and exercise that privilege for her. She and she alone could exercise it.

Does the Act of 1895, if construed as being retrospective in its operation (in other words, as being operative upon persons who were married and who had acquired the homestead before its passage) impair the vested right of the husband? It certainly does. Before the passage of the act, he could convey, himself. After the passage, he is not only barred, but the act says he "shall be incapable of conveying without his wife joins in the conveyance." *Impair means to make worse, to lessen the power, to weaken, to enfeeble, to deteriorate.* This is as Webster defines it. Is not the power of the husband in respect to this homestead lessened, weakened and deteriorated by the Act of 1895, supra? As was said by the court in the celebrated case of Calder v. Bull, supra: "When I say that a right is vested in a citizen, *I mean that he has the power to do certain ac-*

*tions;* or to possess certain things, according to the law of the land.'' Did not the husband in this cause have the power to do certain acts in respect to the property in dispute, that the present law prohibits him from doing?

That able and illustrious jurist, Judge STORY, very tersely places the test when he said in the case of Society v. Wheeler, supra, that ''upon principle, every statute, which creates a new obligation, imposes a new duty, or attaches a new disability, must be deemed retrospective.'' Apply this test to the case at bar. The statute of 1895, imposes upon the husband, the new duty, if he desires to convey, of having his wife join in the conveyance; it attaches a new disability, for the very words of the present statute are that the husband is incapable of alienating his property. It is no answer to this question to say that his right to convey is not absolutely destroyed, that it is only partially so. In the case of Bank v. Sharp, 6 How. 301, the doctrine is clearly announced that ''one of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not, by the Constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force.''

The conclusions reached in this case that George W. Gladney had a vested right prior to the Act of 1895, and that such right can not be impaired by a subsequent statute and that if the Act of 1895 was intended to apply to him, it is retrospective in its operation and is in conflict with the organic law of this State, are supported by principles announced by this court, in analogous cases, and by conclusions reached in other States, in cases identical in principle with the one before us.

In the case of Arnold v. Willis, 128 Mo. 145, BURGESS, J., very clearly announced this doctrine as to the vested rights of the husband: ''Prior to the revision of the statutes in 1889, a husband, by virtue of his marital rights, was entitled to the possession of his wife's lands, held by her as at common law, and could sue therefor in his own name; and the enactment of sections

6869 and 6864, Revised Statutes 1889, providing that real estate belonging to the wife should be her separate property and under her sole control, and empowering her to sue and be sued, at law or in equity, as a *feme sole, did not deprive* the husband of such rights in his wife's property, which had become vested prior to 1889."

In the case of Leete v. State Bank, 115 Mo. 184, all of the authorities are collated and reviewed. That case settles the law in this State that the Legislature has no power to pass laws, retrospective in their operation, so as to affect vested rights. The statute under consideration in the Leete case was the Married Woman's Act of March 25, 1873. It was held that the act "creating a separate estate in the wife's personalty, inclusive of her rights of action and providing that the same shall not be deemed to have been reduced to the possession of the husband by his use, occupancy or care, but only by her express assent in writing, is to be construed prospectively and does not apply to marriages in existence at the time of its passage or to rights which had then accrued." It was further held that "an application of said statute to marriages then in existence or to rights which then had accrued, would be violative of the constitutional provision prohibiting the enactment of a law retrospective in its operation." The conclusion reached in that case was that the Married Woman's Act of 1873 could only operate prospectively, and did not apply to marriages in existence at the time of its passage or to rights that accrued to such existing marriages.

So we say in this case, that the Act of 1895 could only operate prospectively, and is not to be applied to husbands who had acquired homesteads prior to the passage of the act. George W. Gladney, prior to the enactment of this statute of 1895, had the right to convey his homestead without his wife joining him, and as was very appropriately said by the learned judge in the Leete case, "these were his rights; but, when he woke up on the morning the section mentioned went into

operation, he found himself, if plaintiff's position be correct, completely divested of his former vested rights, laboring under a '*new disability*.' ''

It is now the settled law of this State that an act of the Legislature "is to operate prospectively only, and not otherwise, unless upon the face of the act itself the exceptions to the prospective rule do plainly and unmistakably appear." [Leete v. State Bank, supra.]

It may be argued that even though the right of George W. Gladney, prior to the present statute, was a vested one, yet as he had not availed himself of that right, the present law would be applicable and he could not exercise such right after the change in the statute. Perry on Trusts, a work of recognized authority, announced the doctrine upon a question identical in principle with the one before us. He says (vol. 2 [5 Ed.], sec. 676): "On principle, it would seem that the right to reduce the wife's choses in action to possession vested in the husband at the time of the marriage, and could not be divested by a statute passed after the marriage, *although the husband had not, at the time of the passage of the act, reduced the choses to possession;* and so it has been ruled in several cases."

This is a complete answer to that argument, for in the doctrine announced by Perry, as above quoted, the principle is the same; if the right existed, it makes no difference about the exercise of it before the passage of the subsequent statute that undertakes to divest it.

Upon the question involved in this case, as to the right of George W. Gladney prior to the Act of 1895, being a vested right, we are of the opinion that the unbroken line of decisions of North Carolina upon a point which in principle is identical with the one at bar are decisive of this question. That we may fully appreciate the application of the cases to which we hereafter in this opinion direct attention, it would be well in a brief way to refer to the provisions of the Constitution and law of that State. In 1868, the State of North Carolina adopted and ratified its Constitution. The Constitution itself created a homestead defining the amount

of land and value, etc., which was exempted from levy of execution. It also provided for the conveyance of the homestead, but declared that no deed executed by the owner of the homestead should be valid without the voluntary signature and assent of his wife. Prior to the adoption of this Constitution, the owner of the land occupied by him and his wife, could be conveyed by the husband alone. In the case of Gilmore v. Bright (Supreme Court of North Carolina), 7 S. E. 751, in passing on the question as to the right of the husband to convey the land, subsequent to the adoption of the Constitution, the court says: "The case shows that the lands in dispute were the property of Samuel Gilmore long prior to the adoption of the Constitution of 1868, and that he and his wife were married long prior to that time. There never was any allotment of the said lands as a homestead, nor was there ever any petition by the said Gilmore to have such an allotment made, nor was there ever any act of his indicating any purpose voluntarily to have said lands, or any portion thereof, dedicated to the purposes of a homestead. He had, prior to the adoption of the Constitution of 1868, the absolute right to sell or dispose of these lands as he pleased, without the concurrence of his wife, and, if he chose to do so, without her consent; and it is too well established by the authorities, Federal and State, that this right was not divested by article 10, section 8, Constitution of North Carolina, to be questioned now. The State could not by its Constitution or its laws, subsequently adopted or enacted, deprive him of his vested right to sell or dispose of the land in question, without contravening that provision of the Constitution of the United States which declares that no State shall pass any 'law impairing the obligation of contracts.'" The learned judge cites in support of that principle announced, the cases of Edwards v. Kearzey, 96 U. S. 595; Sutton v. Askew, 66 N. C. 172; Bruce v. Strickland, 81 N. C. 267; Murphy v. McNeill, 82 N. C. 221; Reeves v. Haynes, 88 N. C. 310; Fortune v. Watkins, 94 N. C. 304; Castlebury

v. Maynard, 95 N. C. 281, and the numerous cases cited in these authorities.

In the case of Bruce v. Strickland, supra, the learned judge, after reviewing all the authorities upon the question as to the application of the enactment of subsequent statutes lessening the power of the husband under former statutes in respect to his lands, and reaching the conclusion that such subsequent acts do not affect rights secured under former laws, says: ''These decisions rest upon the sanctity of *vested rights* under the protection of the Constitution, among which is embraced the '*jus disponendi,*' or right of alienation.   The principle is too deeply imbedded in the fundamental law of free government to require vindication.''

It may be said that these North Carolina cases are based upon the fact that prior to the adoption of the Constitution there was no homestead, and the land not being a homestead, could be alienated by the husband without the wife joining in the deed.   That does not alter or change the principle announced as applicable to the case at bar, for in this case, the homestead prior to 1895, could be alienated by the husband alone, subject to her dower the same as the land mentioned in the Carolina cases, and it is apparent from an investigation of all those cases that they clearly announce the principle that the right of a husband to sell or incumber his land without his wife joining in the conveyance, is a *vested right,* which a subsequent statute which imposes upon him a new disability and undertakes to prevent him from performing this act alone, can not impair.

This brings us to the last contention of appellants. Appellants insist that the statute of 1895 did not impair any vested right of George W. Gladney; but that it simply changed the remedy or procedure of the wife in respect to the homestead.   The statute of 1895 does not require a single step to be taken by the wife.   She is not required to proceed in any way; but it simply imposes upon the husband a new disability, rendering him incapable of doing an act which, under the prior law, he had a perfect right to do.   If the statute had pro-

vided that the wife should adopt some other method of preventing the sale or incumbrance of the homestead, then it might be said that it was simply a change in the course to be adopted by her, to prevent the husband from acting. But it must be remembered that this change of the statute does not require her to proceed at all; in effect the Legislature says in the Act of 1895, "Under the former law we provided a remedy for you to prevent the exercise of certain rights of your husband, in respect to the homestead. We will now exercise this right for you, irrespective of the fact whether you desire it done or not; we will simply divest your husband of the power to sell or incumber the homestead."

We emphatically hold that this alteration and change in the statute is not simply a change in the remedy or procedure; but is, in the clearest terms possible, a deprivation of a right, which the husband had prior to the enactment of the statute. We may add that a law which, even if intended simply to change the remedy or procedure, if, in fact it impairs vested rights, is just as obnoxious to the constitutional inhibition as if it in the clearest terms violated the constitutional provision. We have examined the cases cited by the learned counsel for appellants upon this question and we are of the impression that they are not based upon similar grounds, and hence are insufficient to change the conclusions reached upon this contention.

Entertaining the views as herein expressed as to the vested rights of George W. Gladney, in respect to the land in controversy, we are of the opinion that the action of the trial court in sustaining the motion to dissolve the injunction and dismissing plaintiffs' bill, was correct, and it is ordered that the judgment be affirmed.

All concur.