ELIZABETH GROWNEY et al., Appellants, v. PATRICK J. O'DONNELL, JOSEPH J. O'DONNELL et al.

In Banc, November 17, 1917.

1. **APPELLATE PRACTICE: No Bill of Exceptions: Questions for Adjudication.** Absent a bill of exceptions, the only question for adjudication on appeal is whether or not the judgment is such as could have been made on the pleadings. Whether or not the deed held in judgment was procured by fraud or undue influence, or was without consideration, being questions dependent upon the facts established by the evidence and those facts being absent, cannot be considered.

2. **EQUITY: General Relief.** A court once possessed of a cause in equity will not release its hold until full equity has been done to all parties interested therein. Especially is this true where there is, in addition to the prayer for specific relief, a general prayer for relief; for, in such case, the court must consider the full import of the pleadings.

3. ———: ———: **Cloud on Title: Partial Relief.** Where the question for adjudication is the validity of a deed, and the specific

prayer is that it be cancelled as a cloud upon the title to the whole tract, the court, under a prayer for general relief, can grant partial relief, and cancel it as to a part of the tract.

4. **HOMESTEAD: Deed of Husband Alone: Cancellation.** A deed made in 1909 by the husband alone, which conveyed lands of which the unassigned homestead acquired prior to the Act of 1895 was a part, is invalid as to the homestead without the signature of the wife, and as to it may be cancelled as a cloud upon the title, but is not invalid as to the rest of the tract, and as to it may be confirmed.

5. ———: **Definition: Conveyance.** The homestead in the country as defined in the statute means the dwelling house and appurtenances and the land used in connection therewith to the extent and value of $1500, and it includes only so much of the land as (together with the dwelling house and appurtenances) is worth $1500. It is only as to that homestead that the statute makes void the individual deed of the husband.

6. ———: **Conveyance by Husband Alone: Valid as to Excess.** A deed signed by the husband alone, who has a living wife, conveying a whole tract owned by him, in which he has an unassigned homestead, is not void as a whole, but is valid as to the excess of land over and above the homestead proper as defined by the statute, subject to the wife's inchoate right of dower in the excess. [Ruling that such question was not involved in Bushnell v. Loomis, 234 Mo. 371, and that the decision therein was not intended, in view of the facts held in judgment, to announce a contrary rule.]

7. ———: **Assignment in Equitable Proceeding.** In an equitable proceeding to remove cloud upon title to land, a court of equity has power, both because of its inherent equitable powers and by the statute (Sec. 6713, R. S. 1909), to appoint commissioners to set off the homestead and the widow's dower in the whole tract conveyed by the individual deed of the husband, and by that method ascertain from what portion of the land the cloud upon the title is to be removed.

Appeal from Nodaway Circuit Court.—*Hon. J. W. Peery,* Special Judge.

AFFIRMED.

*P. L. Growney* and *J. H. Sayler* for appellants.

(1) The land having the status of an original homestead, within the limited area, the trial court erred in finding the deed void only in part. R. S. 1909, sec. 6704; Bushnell v. Loomis, 234 Mo. 371. (2) The court erred in finding the deed valid as to an undetermined

excess, and in proceeding under an inapplicable method to ascertain and set out such excess. Crech v. Childers, 156 Mo. 338; Hoselton v. Hoselton, 166 Mo. 182; Reed Bros. v. Nicholson, 189 Mo. 396; Goodrich v. Brown, 63 Iowa, 347 (cited in the notes to McDonald v. Sanford, 9 Am. & Eng. Ann. Cas. 1, 18 N. W. 894). (3) The answer by respondents (grantees in the deed) does not allege any equitable right in them—they paid no consideration and ask no. relief in equity, and the decree is not warranted. (4) The answer of Mary A. O'Donnell, respondent, does not warrant the trial court in limiting or determining a homestead. Evidently no one is claiming a "homestead," and if the deed is void, her homestead right in the whole tract is not affected, and no pleading in the case justifies the decree as to her.

*Cook & Cummins* and *Shinabargar, Blagg & Ellison* for respondents.

(1) The deed was a valid conveyance of the land in controversy, subject to the homestead and dower rights of the widow. Stephens v. Stephens, 183 S. W. 572; Fields v. Jacobi, 181 S. W. 65; 15 Am. & Eng. Ency. Law (2 Ed.), 683; 21 Cyc. 546. (2) The deed was valid as to the excess of land above the homestead proper. A. The statutory definition of the word homestead is found in Sec. 6704, R. S. 1909. Originally, and in popular, non-technical use now, the word "homestead" denoted the home place, the spot or place where one resides. Elliott v. Thomas, 161 Mo. App. 445; Webster's New International Dictionary; 2 Words and Phrases (2nd Series), 902; 4 Words and Phrases (1st Series), 3327. The homestead is the tract of limited value or area to which the law accords the special protection mentioned in the statute. White v. Spencer, 217 Mo. 252; 4 Words and Phrases (1st Series), 3329, citing Keene v. Wyatt, 160 Mo. 19; Tyson v. Tyson, 71 Neb. 438; Jones v. Losekamp, 19 Wyo. 83; Smith v. Guckenheimer, 42 Fla. 1; Thorp v. Wilbur, 71 Vt. 266; Bebb v. Crowe, 39 Kan. 342. The statutory prohibition against the conveyance of a homestead by the husband without joinder of the wife, has reference to the home-

stead proper, and in no sense forbids the alienation of the surplus in the homestead land above the homestead proper by the husband alone.   15 Am. & Eng. Ency. Law (2 Ed.), 684; 21 Cyc. 551.   There are a number of Missouri cases on questions closely akin to the one we are considering, which furnish ample support for the view urged.  White v. Spencer, 217 Mo. 242; Childers v. Pickenpaugh, 219 Mo. 455.   There is another line of cases which bears out the theory we are presenting.   It is fundamental law in this State that where a homesteader conveys his homestead proper, even in an effort to defraud his creditors, the latter cannot have the conveyance set aside on account of such fraud for the reason that the homestead proper is exempt from their claims and they lose nothing by the conveyance.   But if the land thus conveyed by the homesteader is in excess of the statutory limitation of size or value, can creditors have the conveyance set aside as to such excess?   Most certainly they can, under repeated decisions.   Buck v. Ashbrook, 59 Mo. 200; Hart v. Leete, 104 Mo. 336; Rose v. Smith, 167 Mo. 86; Rouse v. Caton, 168 Mo. 288; Balz v. Nelson, 171 Mo. 682; Stam v. Smith, 183 Mo. 469; Reed Bros. v. Nicholson, 189 Mo. 403; Welch v. Mann, 193 Mo. 314; Childers v. Pickenpaugh, 219 Mo. 455.   A man can no more will away his homestead proper than he can deed it away without his wife's joining in the deed.   Yet whoever heard of a devise of homestead land being void *in toto* because the disposition of the homestead proper was inoperative as to the widow? Stoepler v. Silberberg, 220 Mo. 258; Ball v. Ball, 165 Mo. 312.   A conveyance of an unassigned homestead estate is valid.   Weatherford v. King, 119 Mo. 51; Wilson v. Johnson, 160 Mo. 507.   Where a homesteader made a deed of assignment to creditors conveying his homestead land, reserving his "homestead" the conveyance was good as to the excess, and the homestead proper could be set out any time. Hartzler v. Tootle, 85 Mo. 23. (3) The court did not err in appointing commissioners and dower. This procedure was under Secs. 6710 and 6713, R. S. 1909, authorized in an equity suit like the present

case. It has become necessary in this proceeding to sever the homestead. Like in partition, where the homestead proper embraces all the homestead land, a severance is not necessary or possible, but when there is an excess of homestead land above the homestead proper, and a diversity of title or interest as between the owners of the surplus and the owners of the home- stead proper exists, and the parties interested desire it and are before the court on proper pleadings request- ing it, a severance is proper and necessary. Stoepler v. Silberberg, 220 Mo. 270; Brewington v. Brewington, 211 Mo. 64; Quail v. Lomas, 200 Mo. 687; Simpson v. Scroggins, 182 Mo. 571; Houf v. Brown, 171 Mo. 214; Beckner v. McLinn, 107 Mo. 289; Hart v. Leete, 104 Mo. 336; Miller v. Schnebly, 103 Mo. 368.

GRAVES, C. J.—Plaintiff, the daughter of Patrick O'Donnell, deceased, joined therein by her husband, brings this action in equity to set aside a deed made by Patrick O'Donnell to his sons, Patrick J. and Joseph J. O'Donnell. The petition charges:

"That said Patrick O'Donnell (deceased) was, at the date of his death, the owner in fee of the northwest quarter of the southwest quarter and the east half of the southwest quarter of section thirty, township sixty-three, of range thirty-four, in said Nodaway Coun- ty, consisting of one hundred and twenty acres, and was residing thereon at the time of his death; and was also the owner in fee of 160 acres of land in Bottineau Coun- ty, State of North Dakota, described as the southwest quarter of section fourteen, township one hundred and fifty-nine, north of range eighty-two, west, being all the lands owned by the said deceased at said date.

"That said Patrick O'Donnell was aged about seventy-five years and infirm, and on April 16, 1909, did become seized with pneumonia fever and ailments in- cident thereto, and did become seriously and alarmingly ill from the beginning of his said sickness, with every indication of approaching demise, and did so continue and linger, partly conscious and unconscious, attended by a physician, the family and neighbors, until April 24, 1909, when he died.

"That during said sickness of deceased, to-wit, on April 21, 1909, and while said Patrick O'Donnell was sick unto death as aforesaid, delirious from high fever attendant therewith, rendering him unconscious, weak of mind and body, and evidently approaching death, the said defendants Patrick O'Donnell and Joseph J. O'Donnell fraudulently and wrongfully, and intending to cheat and defraud the other heirs at law of said Patrick O'Donnell, and especially this plaintiff, did induce, compel and cause the said Patrick O'Donnell to make purported deeds of conveyance to all of the said lands described as aforesaid to them, the said Patrick J. O'Donnell and Joseph J. O'Donnell.

"That said Patrick J. O'Donnell and Joseph J. O'Donnell, with the connivance and assistance of one Michael M. Calahan, a brother-in-law to them, and a son-in-law of deceased, did procure a lawyer from Maryville, the county seat of said county, and twelve miles distant from said O'Donnell's place of residence, and did, at the said O'Donnell home, at the hour of twelve o'clock at night, on the said date (April 21, 1909) cause to be made a deed of conveyance as aforesaid to the 120 acres of land aforesaid, situated in said Nodaway County, described as aforesaid, for the recited consideration of 'one dollar' and the further consideration as recited in said deed, 'the consideration in this deed is that the said parties of the second part shall pay to the said party of the first part one thousand dollars per year, during the term of his natural life, payable annually, on the first day of January of each and every year, which consideration is included in a deed between the same parties of even date herewith for 160 acres situated in Bottineau County, North Dakota;' which deed purports to be signed 'Patrick X O'Donnell' and witnessed by 'M. M. Calahan' and 'T. A. Cummings,' and said deed was placed on record in the recorder's office of said county of Nodaway on the next morning (April 22, 1909) at nine o'clock and ten min-

utes a. m. by the said T. A. Cummings, and appears of record in Book 165, at page 13, in said office.

"That said land so conveyed by said deed, comprised the homestead of said Patrick O'Donnell.

"That said deed was not signed by the wife, Mary A. O'Donnell.

"That said deed to said land so made at said time was not the act and deed of the said Patrick O'Donnell.

"That no consideration whatever was paid by the defendants (grantees) to the said Patrick O'Donnell.

"That there was no delivery of the said deed by the said Patrick O'Donnell to defendants, or to any one of them, or to anyone for them; but all that was done relating to said deed or deeds was the fraudulent and wrongful acts of the said defendants, assisted, advised and directed by the said M. M. Calahan, with his employed counsel, said T. A. Cummings, and all with the intent, design and purpose to cheat and defraud the other heirs at law of the said Patrick O'Donnell, and especially this plaintiff, and is a cloud on her interest and title therein."

The answer of the two sons put in issue all the charges in the petition contained. The wife and widow filed a separate answer, in which she says that she understood when the deed was made that she was left her dower interest in the land, and that she only claimed such interest. She admits that the land was the homestead. The chancellor *nisi* found against the plaintiff on the charges preferred against the defendants, in the plaintiff's petition contained, and also found against the defendants' claim that they were entitled to the land, subject only to the dower interest of their mother. The finding of the court was to the effect that the wife had not signed the deed, that she had a homestead therein, and also had a dower interest in the surplus, if the homestead interest set off to her, did not exceed one-third of the whole. In the interlocutory decree the findings are thus stated:

"That on the 21st day of April, 1909, the said Patrick O'Donnell conveyed by warranty deed the real estate hereinbefore described to the defendants Patrick J. O'Donnell and Joseph J. O'Donnell; that at the time of said conveyance the said Patrick O'Donnell, now deceased, had mental capacity sufficient to make said conveyance, and fully understood the character and nature thereof, and that in the execution and delivery of said conveyance he, the said Patrick O'Donnell, was free from any undue influence or fraud on the part of any of the defendants by which he was induced to make said conveyance, and that the same was a legal and valid conveyance of said described land to the defendants Patrick J. O'Donnell and Joseph J. O'Donnell, except as to the homestead interest of said Patrick O'Donnell as hereinafter found and stated, and except as to the dower interest of Mary A. O'Donnell, the wife, and now the widow, of said Patrick O'Donnell, deceased, who did not join in said conveyance. The court further finds that the real estate hereinbefore described embraced and comprised the homestead of said Patrick O'Donnell, to the extent and value of fifteen hundred dollars, and that by reason of the failure of the defendant Mary A. O'Donnell, wife of said Patrick O'Donnell, to join in said conveyance, the same was invalid and void as to the homestead interest to the extent and value of fifteen hundred dollars, and was insufficient to convey said homestead interest; that the land hereinbefore described, is of greater value than fifteen hundred dollars, and that said deed and conveyance hereinbefore mentioned was legal and valid as to the excess of said land, and as to all of said land over and above the said homestead of the value of fifteen hundred dollars, subject, however, to the dower interest of the defendant Mary A. O'Donnell, if any, in such excess and part of said land over and above said homestead interest. The court further finds that the defendant Mary A. O'Donnell is entitled to have admeasured and set off, out of said land, a homestead to the extent of fifteen hundred dollars, and if such home-

stead of the value aforesaid is less than a one-third interest in said land, then she is entitled to have set off to her one-third interest therein as dower, but the amount of such dower shall be diminished by the amount of said homestead of the value aforesaid. The court further finds that the plaintiff Elizabeth Growney, and the defendants Patrick J. O'Donnell, Joseph J. O'Donnell, Hugh J. O'Donnell, Mary Calahan, and Margaret Bradley, being all of the children and heirs at law of said Patrick O'Donnell, deceased, are jointly entitled to the reversion and fee of said homestead of the value aforesaid, subject to the rights and interest of said Mary A. O'Donnell therein in accordance with the statute in such cases made and provided. The court further finds that it is necessary in this proceeding in equity to sever and set off said homestead from the real estate hereinbefore described in accordance with the provisions of section 6713 and 6710 of the Revised Statutes of Missouri of 1909.

"It is therefore by the court ordered and for such purpose the court hereby appoints John Clary, W. C. Pierce and W. F. Jackson, three competent persons and residents of the county of Nodaway, to be commissioners to set off to said Mary A. O'Donnell a homestead of the value of fifteen hundred dollars in the land hereinbefore described, and if in the judgment of said commissioners said homestead so set off shall not equal one-third of the whole value of said land, then in addition to such homestead, they shall set off said Mary A. O'Donnell, as dower such further portion of said land as shall, when added to the value of said homestead, make the whole amount of land so set off to said Mary A. O'Donnell equal to one-third of the entire value of said real estate hereinbefore described; and in fixing the value of said homestead, and the value of said dower, if any, said commissioners are directed and instructed to value and appraise said real estate at its value at the date of the death of the said Patrick O'Donnell, to-wit, April 24, 1909; and said commissioners, before setting off said homestead, shall

first give to said Mary A. O'Donnell the right and privilege to select or indicate from what part or portion of said tract of land she desires said homestead to be admeasured and set off. And said commissioners shall make report of their proceedings herein at the next term of this court, until which said next term of this court this cause is continued for final judgment, order and decree herein, in accordance with the findings hereinbefore stated and set out.''

Commissioners were duly appointed, and they having reported, the court entered the following final judgment in the case:

"Now on this 5th day of November, 1913, the same being the . . . day of the September term, 1913, of the Circuit Court of Nodaway County, Missouri, this cause coming on for final hearing, the plaintiffs appear by their attorneys and the defendants appear by their attorneys, and all parties announce ready for trial, the court doth proceed to take up, hear and consider the report of William F. Phares, John Clary and W. T. Jackson, commissioners heretofore appointed by this court, to set off dower and homestead to the defendant Mary A. O'Donnell in the following described land, towit:

"The northwest quarter of the southwest quarter and the east half of the southwest quarter of section thirty, township sixty-three, range thirty-four, Nodaway County, Missouri, consisting of one hundred and twenty acres.

"And after considering said report, and it appearing that no exceptions to the assignment of homestead and dower as made therein have been filed by the parties, said report is in all respects confirmed and approved, and it is hereby ordered, adjudged and decreed that the title to the following described land be vested in said widow, Mary A. O'Donnell, as her homestead, to-wit:

"The south twenty acres of the northwest fourth of the southwest quarter of section thirty, township sixty-three, range thirty-four, Nodaway County, Missouri.

"It is further ordered, adjudged and decreed that the defendant widow, Mary A. O'Donnell, have and retain as and for her dower in the estate of Patrick O'Donnell, deceased, the following described land, which is hereby set off and assigned to her as dower in excess of her aforesaid homestead, to-wit:

"The south seven acres of the north twenty acres of the northwest fourth of the southwest quarter of section thirty, township sixty-three, range thirty-four, being a strip of land fourteen rods wide north and south by eighty rods long east and west, immediately adjoining said homestead on the north.

"It is further ordered, adjudged and decreed that the plaintiff Elizabeth Growney, and the defendants Hugh J. O'Donnell, Mary Calahan and Margaret Brady, take no right, title, or interest in any part of the land herein described, save and except an undivided one-sixth each in and to the homestead of said Mary A. O'Donnell, above described, subject, however, to her homestead rights in the homestead hereinbefore described, until her remarriage or death.

"It is further ordered, adjudged and decreed that the defendants Patrick J. O'Donnell and Joseph O'Donnell have and take the sole and exclusive right, title, and interest in and to all of said one hundred and twenty acres of land herein first described, excepting the twenty acres above set out as a homestead to said widow and the seven acres above set out to said widow as and for her dower, and that upon the remarriage or death of said widow, the said Patrick J. O'Donnell and Joseph J. O'Donnell have and take an undivided one-sixth interest each in and to said twenty acres homestead, above described, and an undivided one-half interest each in and to said seven acres, hereinbefore set aside as dower for said widow, upon the death of said widow.

"It is further ordered, adjudged and decreed that the plaintiff Lawrence F. Growney and the defendants Clara O'Donnell, Michael M. Calahan and William F. Brady have and take no right, title or interest whatever

272 Mo.—12

in and to any of the above described land, save and except such subsidiary rights as they may respectively have in the interest of their several spouses in virtue of dower or curtesy and their other marital rights, under the laws of this State.

. "It is further ordered, adjudged and decreed that the warranty deed from Patrick O'Donnell, deceased, to the defendants Patrick J. O'Donnell and Joseph J. O'Donnell, dated April 21, 1909, be and the same hereby is held and adjudged valid and binding to vest title in and to all the land herein described in the defendants Patrick J. O'Donnell and Joseph J. O'Donnell, save as to said homestead and dower hereinbefore described, and that they recover their costs herein expended."

We have set out these matters fully, because there was no bill of exceptions filed, and the case is here upon the record proper.

I. Absent a bill of exceptions the validity of the deed from Patrick O'Donnell to his sons cannot be here attacked from the standpoint of the facts held in judgment by the chancellor *nisi*. We proceed upon the

Relief
in
Equity.

theory that the grantor was mentally capable of making a deed; that he was not coerced, forced or over-persuaded in the making of the deed; that such deed was not fraudulently procured; that it was executed for a valuable consideration; and that it was duly delivered. We do this, because these were all questions of facts, and these facts are not before us. In the absence of the facts the right action of the trial chancellor is presumed.

Indeed, absent a bill of exceptions, the only question is whether or not the judgment is such as could have been entered upon the issues made by the pleadings.

This is an action in equity, with prayer for general relief. The answer of the two sons is in the alternative. We did not state this fully in our statement, but do so now. These two defendants (grantees in the deed)

claimed in their answer (1) that they were possessed of a full title to all the land, subject only to the dower interest of the widow, but (2) in the alternative they asked that, if the chancellor could not so find, and did find that the deed did not convey the homestead, then that the court have the homestead admeasured, and declare the interest of the parties therein. The chancellor compelled the plaintiffs to bring in all parties who might have an interest in the lands, upon any theory of the case.

It is a rule in equity that if the court becomes possessed of a cause in equity, it will not release its hold until full equity has been done all parties interested therein. Thus in Harrison v. Craven, 188 Mo. l. c. 602, it is said:

"There was no error *nisi* in finding for respondent on the first count, in so far as the damages claimed were concerned. The trouble does not lie with the right of a court of equity to deal with the subject of damages, were the damages of an allowable character; for a court of equity to deal with the subject-matter of a suit within its grasp, will go on and retain its grasp on the *res* in order to avoid circuity of action and do rounded-out and complete justice by awarding damages as well as relief in kind. [Baile v. Ins. Co., 73 Mo. l. c. 384; Woodard v. Mastin, 106 Mo. l. c. 362; Morrison v. Herrington, 120 Mo. l. c. 668.]"

Especially is this true where there is a prayer for general relief, as here. In our statement we did not set out plaintiffs' prayer for relief, but there is, in addition to specific prayer for relief, a general prayer for relief. So that, in this case, we must not only consider the rule in equity first above stated, but also the full import of the pleadings.

II. In this case the plaintiffs sought the cancellation of the deed, because such deed cast a cloud upon

their title. The court by its judgment refused to cancel the deed as to all of the land, but did nullify the effect of the deed as the plaintiff's interest in 20 acres' of the land. The question before the court was the validity of this deed and the effect of such deed under the facts pleaded. Unless precluded by a matter which we discuss next, we do not see that the judgment or decree entered was not one within the purview of the case before the court.

Cloud on Title: Partial Relief.

The prayer for specific relief asked for the removal of the cloud of title (created by the deed) from the whole tract of 120 acres, but under the prayer for general relief a court of equity could grant partial relief, to say the least, and yet the decree would be within the purview of the pleadings. [16 Cyc. 487.]

III. Equity respects and follows the law, and one of the contentions in this case is, that under the law, the deed was absolutely void as to the whole tract, because such tract of land was the homestead of the grantor, and the wife did not join in the deed. Taking the interlocutory and final judgment together (and this we must do) the point comes up properly on the face of the record proper. The judgment or decree shows that the chancellor held the deed invalid as to the homestead proper, but valid as to the excess. Does this action of the court do violence to our statutes and the law? This is the principal question. This tract of 120 acres was acquired and made a homestead prior to the Act of 1895, but this becomes immaterial under our ruling In Banc in Bushnell v. Loomis, 234 Mo. 371, which overruled Gladney v. Sydnor, 172 Mo. 318. In the Gladney case it was held that when the homestead was acquired prior to 1895, the homestead lands could be conveyed by the husband, without the wife joining, although he made his deed after the Act of 1895. This rule was changed by the Bushnell case, supra, and we there held that there could be no valid deed made to the homestead proper, without the wife joining, whether the homestead came into

Husband's Deed to Land in Excess of Homestead.

being before or after the Act of 1895. The chancellor trying this case followed the Bushnell case, and held that although the homestead had become fixed prior to Act of 1895, yet it required the signature of the wife to make such deed valid as to the homestead proper. He further held that the deed was good as a conveyance of all the tract of land in excess of the legal homestead, and of all interests in such excess, except the inchoate dower of the wife. Was the learned chancellor right in this holding? We think so.

The word "homestead" has been loosely used in the opinions. At times it has been made to apply to the tract of land out of which the legal homestead or homestead proper, would have to be carved. But we must determine what is meant by the term "homestead" as used in section 6704, Revised Statutes 1909. That section reads:

"The homestead of every housekeeper or head of a family, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the amount and value herein limited, which is or shall be used by such housekeeper or head of a family as such homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and execution, except as herein provided; such homestead in the country shall not include more than one hundred and sixty acres of land, or exceed the total value of fifteen hundred dollars; and in cities having a population of forty thousand or more, such homestead shall not include more than eighteen square rods of ground, or exceed the total value of three thousand dollars; and in cities having a population of ten thousand and less than forty thousand, such homestead shall not include more than thirty square rods of ground, or exceed the total value of fifteen hundred dollars; and in cities and incorporated towns and villages having a population less than ten thousand, such homestead shall not include more than five acres of ground, or exceed the total value of fifteen hundred dollars. The husband

shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void.''

To what does this statute refer when it says ''and every such sale, mortgage or alienation is hereby declared null and void.'' That it refers to the ''homestead'' as mentioned in the previous part of the section there can be no question. The question is what is that homestead? The case here is a ''homestead'' in the country, and we shall confine our remarks to such a ''homestead'' and it in the language of the statute is made up of ''a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the amount and value herein limited.'' The limitations mentioned above are: ''such homestead in the country shall not include more than 160 acres of land, or exceed the total value of fifteen hundred dollars.'' So that the statute defines the meaning of a homestead proper. By the term ''homestead'' as used in the statute, is meant the dwelling house and appurtenances and the land used in connection therewith to the extent and value (house, appurtenances and land taken together) of $1500, but in no event shall the amount of land exceed 160 acres, although the combined value may be less than $1500. This homestead tract may be greatly less than 160 acres, owing to the value of the house, appurtenances and land. And it is this $1500 worth of land and improvements thereon that is the homestead which is referred to when the later clause of the statute makes the individual deed of the husband thereto void. The statute does not have reference to the whole tract out of which the homestead is to be carved.

By appellants we are cited to the Bushnell case, supra, as authority for the contention that the deed is void as to the whole tract out of which (under given circumstances) the homestead would be carved. The writer wrote the opinion in that case, and we had no such idea. We did use the expression: ''In such case she

has not joined in the conveyance and the conveyance is wholly void." The facts of that case must be considered. The land involved was only forty acres and no claim was made that it exceeded in value the $1500. The wife signed a deed of trust thereon when mentally incapacitated to execute such instrument. The forty-acre tract was used as a homestead. The question of there being an excess of land over the homestead proper was not in the case. So this language was never used in a way to mean that the deed of the husband to the whole tract out of which the homestead would be carved, was wholly void, both as to the homestead proper, and the land in excess of the homestead. We had previously strongly intimated to the contrary, in White v. Spencer, 217 Mo. 242. In the White case it was urged that a judgment lien would not attach to any portion of the tract out of which a homestead might be carved. We held that the lien would attach to all of the land in excess of the homestead, and as these views contravened some broad language used in Macke v. Byrd, 131 Mo. 682, the White case was sent to Court in Banc, and there unanimously approved. We also held in that case (217 Mo. l. c. 258):

"The word homestead as here used means a tract of land falling within the statutory limitations as to quantity and we might add, value, although not herein involved. We have properly construed the homestead act to mean that no lien attaches to a homestead proper, that is, to the tract owned, occupied and claimed as a homestead, when it falls within the statutory limitations as to quantity and value."

It thus appears that the Court in Banc holds that the excess in the homestead tract over and above the "homestead proper" as defined by statutes is subject to a judgment lien. The exact question involved in the case at bar, i. e., is a deed, signed by the husband alone, covering the whole homestead tract, valid as to the excess over and above the "homestead proper," as defined by statute, has never been decided in this State. The general current of authority holds such deed valid

as to the excess, subject, of course, to the inchoate right of dower. In 21 Cyc. 551, it is said:

"The view is sustained by the majority of the courts that a deed covering the homestead and other lands, or covering a single tract whose value exceeds the statutory exemption, although it be invalid as to the homestead, may yet be sufficient to convey or encumber that portion of the property which is in excess of the statutory exemption."

So too in 15 Am. & Eng. Ency. of Law (2 Ed.), p. 684, it is said:

"The various provisions of the statutes to the effect that a conveyance or alienation of the homestead without the joinder or consent of the husband shall be void or ineffectual have been held not to render it ineffective so far as concerns property covered thereby which is not included within the homestead, the conveyance being regarded as valid so far as concerns any excess, either in quantity or value, over the statutory exemption. This is either expressly or impliedly stated in a number of cases. In other cases it is broadly stated that the conveyance is absolutely void without any reference to the question whether it would be valid as to any excess over the statutory exemption; but these are generally cases in which there was no such excess, and consequently a consideration of the question of the effect of the conveyance upon the excess was not called for. Apparently the only case in which a different view from that above stated has been taken was decided in Massachusetts, the conveyance being there held to be void as to all the land covered thereby, though greatly exceeding the value of the exemption. Since then the prevailing rule has been adopted in that State by statute."

It is evident the word "husband" in the above has been inadvertently used for "wife." This rule seems to us reasonable, and under our statute the only one which could be applied. The purpose of the Homestead Act was to allow the husband, as exempt, $1500 worth of real estate, and in the event of his death this real estate, so exempted, passed to the widow and children.

If the husband had $1500 of real estate upon which he lived, and then 80 acres of the value of $5000, which was not used in connection with the homestead proper, there can be no question that a deed to both tracts signed by him alone, would carry his title to the 80 acres, subject to the inchoate dower right of his wife. We think in reason that the same rule should apply as to the excess in the homestead tract. Suppose a man had a section of land upon which he lived and all of it was used as one farm and in connection with the house and appurtenances there, would it be said that the husband's deed to this 640 acres of land would convey no title or interest to his vendee? Or suppose he only had eighty acres, but the house and south forty thereof was worth more than $1500, would his deed to the whole eighty give the purchaser no title to the north forty? We are satisfied that the husband's deed to the tract of land out of which a homestead proper is to be carved, will convey all excess to the purchaser, save and except the inchoate right of dower. Such were the views of the chancellor *nisi* in this case, and we approve them.

IV.  It is thus contended in appellant's brief:

"The court erred in finding the deed valid as to an undetermined excess, *and in proceeding under an inapplicable method to ascertain and set out such excess.*"

The italics are ours. The first of these two contentions we have just disposed of in the foregoing paragraph. We have left only the italicized portion of the contention. As stated, the chancellor *nisi* had all interested parties brought before him. He then heard all issues and concluded that a homestead should be admeasured before final decree, and he appointed three commissioners to set out the homestead. The question is, was this proper in this equitable proceeding to remove cloud from title? We thinks so, as said, when courts of equity once become possessed of the *res* such courts can and should fully determine the matter as to all parties and as to all interests. The court trying this case, in determining whether or not plaintiffs were entitled

to have a cloud upon their title removed, had the right to determine what title if any the plaintiffs had. Not only so, but in what portion of the land, if any, they had a title to be clouded by the deed sought to be canceled. We think the inherent powers of equity would authorize the course here pursued. In other words, the court had the right to determine, as it thought best, the interest, if any, of the plaintiffs in and to this land, the title to which might be clouded by the dispute. So on the broad power of equity, we might rest the case.

But we have a statute, which in our judgment fully covers the procedure followed by the learned chancellor. Section 6713, Revised Statutes 1909, reads:

"Whenever, *in any case not in this chapter otherwise provided for,* it shall become necessary, in any proceeding at law or *in equity,* to sever or set out any homestead from other real estate, the court in which such proceedings shall be pending may appoint three commissioners to appraise and set out such homestead, which commissioners, after being sworn to the faithful discharge of their duties, shall appraise and set out such homestead in the same manner as is provided in this chapter for setting out homesteads in case of the levy of execution, and make report of their doings to such court, which report shall be confirmed by such court, unless good cause be shown to the contrary; and a record thereof shall be made in the records of lands, where a deed of such homestead would by law be required to be recorded, which shall operate as a severance of such homestead from such other real estate."

Upon its face the statute contemplates the admeasurement of a homestead in cases not specifically named, and in addition contemplates that courts of equity may resort to the procedure in the chapter named. In fact, it authorizes the appointment of commissioners in suits in equity. So far as the record proper discloses the case was well tried below, and the judgment is affirmed.

PER CURIAM: The foregoing opinion of GRAVES, J., in Division is adopted by the Court in Banc as the opinion of the Court in Banc. All concur, except *Bond, J.,* who dissents.