## E. E. CARSON v. BERTHOLD & JENNINGS LUMBER COMPANY et al., Appellants.

### Division One, March 12, 1917.

1. **COUNTY LAND: Ripley County: Sale for Fifty Cents Per Acre.** A
sale of swamp land granted by the State to Ripley County in 1857,
and conveyed by the county to a private citizen in 1859, was not
void for that it was sold for fifty cents per acre, for the Act of
January 30, 1857, Laws 1856, p. 464, provided that the minimum
price for such lands lying in that county should be fifty cents an
acre. [The Act of January 30, 1857, was not considered in Bayless
v. Gibbs, 251 Mo. 492, and hence it is not an authority for a contrary
ruling, and if it intended to announce a contrary ruling it is dis-
approved.]

2. ————: ————: **Transfer to Another County.** Swamp land was
granted by the State to Ripley County by legislative act dated
November 4, 1857, and by that county was patented to a private
citizen in 1859. In 1864 the line between Ripley and Butler counties
was so changed that the land was thrown into Butler. *Held*, that
as the title was transferred by Ripley County prior to the change in
the boundary, no title ever vested in Butler County, and defend-
ants acquired no title based on a patent from that county.

3. **CONVEYANCES: Equitable Title: From Husband to Wife: Statute
of Uses.** If the estate vested in the wife by a deed directly to her
from her husband, made prior to the Married Woman's Act, re-
mained in her until after his death, the Statute of Uses upon his
death executed the dry trust, and her deed thereafter conveyed the
legal title.

4. **LACHES: Neglect of Legal Title.** If the owner of a superior title with full knowledge of his rights, neglects to assert or establish them against an adverse claimant in possession, for such a length of time as to afford a presumption that they have been abandoned, or as would prevent the adverse claimant from proving his claim or title, or as would inflict an inequitable injury upon such claimant if he were ousted, then the owner of the superior title will not subsequently be aided by equity to recover the land. But if the delay of the present or previous holders of the paramount title in asserting their rights has not altered the position of the present adverse claimant or those from whom he claims, the land was submerged and not in possession of any one until recent years, the delay has not affected the documentary evidence upon which such claimant relies to show his title, and all that has been done by him has been to erect cheap buildings for the use of employees engaged in cutting timber and tillage, the paramount title has not been defeated by laches.

5. **LIMITATIONS: Pleading.** If there has been adverse possession for a sufficient length of time to create title, the statutes of limitations need not be specially pleaded but may be invoked under a general denial.

6. **———: Swamp Lands: Sec. 7997.** The purpose of the last proviso to Sec. 7997, R. S. 1909, was to establish title by prescription in patentees of swamp land conveyed by the county court prior to 1880, who had claimed and paid taxes for more than twenty years. The act had no retroactive operation, and did not prejudice the title which had been conveyed by patent by the county to a private citizen prior to its enactment.

7. **———: Thirty-Year Statute: Payment of Taxes: Alteration of Tax Book: Interpolations.** Documentary evidence, such as a tax book, showing on its face circumstances of suspicion, such as writings over erasures, or the use of different inks, or interpolations, should not be received in evidence without explanation on the part of the party producing it. And that rule applies to an erasure and a change in the description of land on the tax book, where it is attempted thereby to show by the plaintiff that he paid the taxes one year out of the thirty.

8. **———: ———: Title.** The failure of the owner of the paramount title to pay taxes for thirty-two years will bar him from recovering the land from one who for many years has paid the taxes and has for seven years been in possession and claiming to be the owner under a patent from the county, which did not convey the title because it had been previously conveyed by another county at a time when it was a part of its swamp lands.

9. **———: ———: Burden of Proof.** The thirty-year Statute of Limitations requires the party invoking it to show non-payment of

taxes by the owner of the paramount title, but the evidence to support that negative is not required to be either other or greater in degree than that which would generate belief in the minds of the triers of the fact.

Appeal from Butler Circuit Court.—*Hon. J. P. Foard,* Judge.

REVERSED.

*N. A. Mozley* and *Francis M. Curlee* for appellants.

(1) The patent of Kittrell, Swamp Land Commissioner, under which plaintiff claims, shows on its face that the land was sold at fifty cents per acre, and is, therefore, void. Bayless v. Gibbs, 251 Mo. 492. (2) The title to the land, therefore, remained in Butler County, and passed to defendants' grantors by the patent from the Swamp Land Commissioner. (3) Defendants acquired title by the twenty and thirty-year Statutes of Limitations. Secs. 1884, 7997, R. S. 1909; De Hatre v. Edmonds, 200 Mo. 246; Collins v. Pease, 146 Mo. 135. (4) The payment or non-payment of taxes is proved as a fact, and by the same sort of testimony by which any ordinary fact may be proven. Rollins v. McIntyre, 87 Mo. 496; Campbell v. Greer, 209 Mo. 199. (5) The plaintiff must himself prove an indefeasible title, and cannot rely on any weakness, if any, in defendants' title. Wheeler v. Land Co., 193 Mo. 279; Senter v. Lumber Co., 255 Mo. 590; Skillman v. Clardy, 256 Mo. 297. (6) If plaintiff has any title, it is only an equitable title. His petition declares on an equitable title and he claims through deed of June 1, 1878, from John T. Hodgen directly to the latter's wife Elizabeth D. Hodgen, which deed conveyed no legal title. Turner v. Shaw, 96 Mo. 22; Crawford v. Whitmore, 120 Mo. 44. (7) Plaintiff is barred of equitable remedy by the laches of himself and grantors. Shelton v. Horrell, 232 Mo. 358; Troll v. St. Louis, 257 Mo. 660; Moreman v. Talbott, 55 Mo. 392; Landrum v. Bank, 63 Mo. 48; Cockrill v. Hutchinson, 135 Mo. 67; Sensenderfer v. Smith, 66 Mo. 80; Schradski v. Albright, 93 Mo. 42.

*David W. Hill* for respondent.

(1) The consideration of fifty cents per acre in the Ripley County patent was authorized by a statute then in force. Laws 1856-57, p. 464. (2) The title to the land in suit never rested in Butler County. Laws 1857, p. 32; Simpson v. Stoddard Company, 173 Mo. 421; French v. Fyan, 93 U. S. 169. (3) After the land was patented by Ripley County it was located in Butler County by a change of the county line. Laws 1863-64, p. 409. (4) Sec. 7997, R. S. 1909 could not disturb or affect title to this land—could not disturb vested rights. Telephone Co. v. Telephone Co., 236 Mo. 132. (5) Defendants' grantors entered upon the land and cut timber in 1906 and built some shacks for sawmill purposes— defendants attempted to purchase in 1909. Defendants admit that saw-mill shacks did not enhance value of land. Disinterested witness swore cutting timber damaged and did not enhance value of land. Plaintiff brought suit in 1913. Plaintiff's grantors had paid taxes within thirty years, and he is not barred by any statute or laches. Marshall v. Hill, 246 Mo. 25. (6) The presumption obtains that the interlineation in the tax book was regularly made. 2 Cyc. 242. The so-called "railroad tax books," introduced by defendants, to prove payment of taxes, were not authorized by law. Secs. 7576, 7551, R. S. 1889; Secs. 6723, 6704, R. S. 1879. (7) The deed to Elizabeth D. Hodgen from her husband conveyed the equitable title, and when he died, or the marriage ceased from any other cause, the legal title was thereupon vested in her, and her deed, as widow, conveyed the absolute title to John M. Hodgen. Stark v. Kirchgraber, 186 Mo. 633. (8) Laches, relied upon as an estoppel, must be pleaded, and there is no such plea in this case. Turner v. Edmonston, 210 Mo. 428; Grooms v. Morrison, 249 Mo. 550.

BOND, P. J.—I. Suit to quiet title and for possession of eighty acres of swamp land. In the first count of his petition plaintiff alleges he is the "equitable owner"

270 Mo.—16

of the land. In the second count he alleges that on the 19th day of June, 1913, he was the owner of the same land and prays ejectment of defendants and damages and monthly profits. The answer of defendants avers that they own the land in fee, and, further, that plaintiff is estopped by laches and barred by the thirty-year Statute of Limitations. Issue was joined by a reply. The case was tried by the court, a jury being waived, and judgment was rendered on the first count of the petition that plaintiff "is the absolute owner in fee simple of the land" in dispute, and on the second count the court found the issues for plaintiff and gave judgment for $300 damages, $40 as monthly rents and profits, and for possession of the premises and awarded execution accordingly.

*Statement.*

II. The land was granted by the United States to the State of Missouri through an act of Congress, September 28, 1850. This land was situated in Ripley County, Missouri, and the full title thereto was vested in said county by grant from the State through the Act of the General Assembly passed on November 4, 1857. [Laws 1857 (Adj. Ses.), p. 32.] In 1864 the line between Ripley and Butler Counties was altered, whereby the land was thrown into Butler County. The title claimed by plaintiff was derived through mesne conveyances from Isaac N. Hedgepeth, to whom the land was patented by Lemuel Kittrell, Swamp Land Commissioner of Ripley County, on May 20, 1859. The title of the defendants is based upon a patent from the State of Missouri to Butler County, dated February 17, 1870, and recorded March 30, 1870, after which Butler County, by its Swamp Land Commissioner, patented the land to the St. Louis Iron Mountain and Southern Railway Company, duly recorded February 3, 1871, and on May 10, 1901, the said corporation conveyed the land to William M. Barron, by deed recorded June 26, 1901, and the latter conveyed the title to the defendants.

*County Patents.*

It is insisted by defendants that inasmuch as the original patent from Ripley County to Isaac N. Hedgepeth shows that the land was sold at fifty cents per acre, such patent was absolutely void under the doctrine of Bayless v. Gibbs, 251 Mo. 492. This assignment is not well taken, for it distinctly appears that there was then in force an act of the Legislature, approved January 30, 1857 (Laws 1856, p. 464) which provided that the minimum price for swamp lands lying in Ripley and other counties mentioned, should be fifty cents an acre. This act of the Legislature does not seem to have been repealed in 1859, when the Swamp Land Commissioner of Ripley County conveyed the land in dispute to the first taker in plaintiff's chain of title. Hence the validity of that conveyance is not affected by the ruling in Bayless v. Gibbs, supra. Moreover, this statute does not seem to have been called to the attention of the court in Bayless v. Gibbs, and anything ruled in that case contrary to its provisions is, therefore, disapproved.

Assuming, as we must, under the terms of this statute, that the title of Ripley County was transferred prior to the change of boundary between that county and Butler County, whereby the land was taken into and became a part of the domain of Butler County, it is evident that no title to the land ever vested in Butler County, and hence defendants could not have acquired any title based on a conveyance from it.

III. This leaves for decision only the question as to the nature of the title acquired by plaintiff and whether or not it has been lost by laches or barred by the thirty-year Statute of Limitations.

With reference to the title acquired by plaintiff, appellant makes the point that one of the mesne conveyances upon which it depended was a direct deed from a husband to his wife (Hodgen to Hodgen) executed before the enactment of the Married Women's Statute, and hence under the authority of Turner v. Shaw, 96 Mo. 22, and subsequent

Equitable
Title.

cases, the grantee only acquired an equitable estate. But an examination of the abstract discloses that the estate thus vested in her remained such until after the death of her husband, and the rule is, now established (Stark v. Kirchgraber, 186 Mo. 1. c. 642 et seq.) that in such cases the statute of uses executed the dry trust which was in her husband whenever the wife became discovert. Hence the point made by appellant is no longer tenable.

It is further insisted by appellant that respondent is estopped by the laches of his grantor. Waiving for the consideration of this point, whether the pleadings

Laches.

to that effect sufficiently state the equities calling for the application of that rule, we will dispose of the point.

The basis of the rule estopping one by his own laches or that of persons with whom he stands in privity, is laid in the equitable maxim that "he who seeks equity must do equity," and hence if the owner of a superior title, with full knowledge of his own rights, neglects to assert or establish them against an adverse claimant in possession of the land, for such a length of time as to afford a presumption that they have been abandoned or would prevent the other party from proving the claim or title, or would inflict an inequitable injury upon him, then the owner of such paramount title loses the aid of equity when he subsequently seeks to recover the land. This doctrine rests purely on equitable principles and may be invoked independently of the lapse of time fixed by the Statutes of Limitation. [Toler v. Edwards, 249 Mo. 1. c. 167, and cases cited.] Although the present holder of the title to the property in dispute acquired the same by quit-claim deed from a non-resident whom he succeeded in finding after letters of inquiry, immediately before the institution of the suit, yet we do not discover in the facts shown in the record, that the delay of the previous holders of the title, in the assertion of their rights, has altered the position of the defendants or those from whom their title is deraigned. The land seems to have been prac-

tically submerged until 1906, and not until that time in the actual possession of any one. Defendants acquired their claim of title in 1909, through a chain running back to a conveyance from Butler County in 1870. The delay on the part of the grantors of plaintiff has not affected in any way the documentary evidence upon which defendants rely to show record title, which consists of a series of written conveyances; for the two chains of title rest upon writings which speak for themselves. Hence it cannot be said that defendants have been put to any disadvantage in proving their title. Neither has any inequitable damage been inflicted upon them since the occupancy of the land began and since the possession was taken thereof by defendants in 1909. All that appears to have been done was the erection of convenient and cheap buildings for the use of the employees of defendants engaged in cutting timber from the land and tillage. In these circumstances we are unable to say that the rights of the defendants have been prejudiced by the delay of the previous grantors of plaintiff to assert their title or that defendants have been put to any disadvantage by the death or disappearance of witnesses in making proof of their title.

IV. The decisive question in this case grows out of the defense of the Statute of Limitations. The law is well settled that where that lapse of time has occurred which, by the Statute of Limitations, is fixed for the creation of an estate by adverse possession or undisturbed occupancy, the statutes need not be specially pleaded, but may be relied on under a general denial. [Nelson v. Brodhack, 44 Mo. 596; Collins v. Pease, 146 Mo. 135; DeHatre v. Edmonds, 200 Mo. l. c. 275, 277.] In considering these defenses the statute of ten years creating title by adverse possession need not be discussed, since there was no actual possession of the land whatever until 1906 and the suit was brought within ten years from that time. Nor was section 7997, Revised Statutes 1909, operative under the facts in this case. The plain purpose of that statute, as is evidenced by the final pro-

*Limitations.*

viso therein, was to establish title by prescription in the patentees of land conveyed by the county courts of the State prior to 1880, who had claimed and paid taxes on such lands for more than twenty years. The act had no restrospective effect and could not prejudice the title which was conveyed by patent from Ripley County to the original grantor under whom plaintiff claims before the statute in question was enacted. The estate vested by that conveyance could not be divested by a subsequent patent from Butler County after the land had become a part of its territory in the circumstances shown in this record.

V. This leaves only the question of the application of the section known as the thirty-year Statute of Thirty-year Limitations (R. S. 1909, sec. 1884). There is Statute. proof of the payment of taxes by defendants, or those under whom they claim, for a period of more than thirty-two years up to and including 1913, unless a contrary showing was made when plaintiff gave in evidence two leaves taken from the book of the Assessor of Taxes for the years 1883 and 1892. These have been incorporated in the abstract and each has been magnified by a closer photograph. The magnified representation of the first of these shows between items numbered 606 and 607, and 607 and 608, a written insertion of the name ''Hodgins, E. D.'' The insertion of the name before No. 607 is opposite 80, under the head of acres, and under the head of ''By whom paid,'' the following entry: ''Dec. 19——83, Keith and Righter.'' Between items 607 and 608, is the same insertion of ''Hodgins, E. D.'' followed by 40 under the head of acreage, and under the head of ''By whom paid:'' ''Dec. 19—83, Righter and Keith.'' The names of all other owners to whom lots were assessed are set opposite an appropriate numeral. No appropriate numeral appears in front of the two insertions of the name ''Hodgins, E. D.'' It is, therefore, certain that the two insertions of the name ''Hodgins, E. D.'' were not made at the time or before the other names of assessed owners were written in the

order of the serial numbers before each.   Neither is there any evidence that "Keith & Righter" acted for the predecessors of plaintiff.   This document is without any evidentiary force and may be disregarded.

VI.   The next entry on the enlarged photograph is No. 716.   The land there appears to be assessed to **Alteration of Tax Book.** "Timberman, G. H." There the 'tax book shows an alteration by erasure of the words "Lot 2" and a writing above of "E 1-2" and a payment of the tax in 1892 by J. M. Hodgen. This photograph shows nothing as to the color of the ink.

Unless this payment of taxes was made on the land in dispute on behalf of the then owners of the record title, the bar of the statute for thirty years was sufficiently established by the testimony of witness Greason, Deputy County Clerk, and McClain, which disclosed that from 1882 to 1900, inclusive, the entire taxes on the land in dispute were paid by the railroad, which during that period was the holder of the title based on the patent from Butler County, except that no taxes were paid during the years 1888 and 1889 on the south half of the land.. As to the latter date there was testimony tending to show that the railroad company paid the entire taxes, although for that year the land was assessed erroneously to John Mangold.   How the north half was paid for the year 1888 rests in inference.   But there was no evidence from any source that plaintiff, or those under whom he claims, made any payments for either of those years, and unless the entry contained on the second leaf of the Tax Assessor's book above referred to, afford a basis for a reasonable inference of such payment on behalf of plaintiff's grantors, then there is not a fact or circumstance in the record upon which such a finding could be predicated.   The testimony as to payments by the railroad was given by the person employed in its land department, and was based on his own knowledge and own hand. riting and recorded on a separate tax book which was copied from the

general book of assessments and furnished for the convenience of the land department of the railroad.

After the railroad parted with its title, from 1901 to 1913, defendants introduced the tax receipts. It is, therefore, clear to. a demonstration that the bar of the statute of thirty years accrued unless it is' shown by reasonable presumption from the interpolations and alterations on the second leaf of the Assessor's book that the payment there noted was made in behalf of plaintiff's grantors or by them. [Campbell v. Greer, 209 Mo. 199.]

The rule is well settled in this State that where documentary evidence is produced, showing on its face circumstances of suspicion, such as writings over erasures or the use of different inks, or interpolations, that they should not be received in evidence without explanation on the part of persons producing them.

In speaking of the alteration of a special tax bill by the erasure of descriptive words and the insertion of others,. it was said: "And this fact was sufficient to excite suspicion and justify the court in · requiring evidence that the alteration was bona-fide and proper before admitting the tax bill itself in evidence." [Bank v. Manning, 133 Mo. App. l. c. 298; Paramore v. Lindsey, 63 Mo. 63; Stilwell v. Patton, 108 Mo. l. c. 360.] There can be no question from a consideration of the photograph contained in the abstract that the second leaf of the Assessor's book bore on .its face evidence casting suspicion upon the altered and added entries. While it is true that public records are subject to less "suspicion" in case of alterations than private papers (2 Cyc. 242) yet this rule does not "obtain if the interlineation or alteration is itself suspicious." [Cox v. Mignery & Co., 126 Mo. App. l. c. 682, 683 and cases cited; 2 Cyc. 242,. par. h.] The ·evidence is undisputed that this land was never at any time assessed for taxation against any holder of the title under whom plaintiff claims, and that in the instance relied on to show such payment, the actual assessment was of 127 acres against "Timberman, G. H." This

fact, together with the patent erasure and alteration of the description of the land and with the failure to show, by oral testimony, the inclusion of the land in dispute in the larger acreage assessed against Timberman, necessarily creates such suspicion against this isolated excerpt from the Tax Assessor's book as to bring it within the rule, making it the duty of the party relying thereon to show that it was his land on which he was paying taxes.  The record relating to the offer of this evidence is, towit:

"Mr. Hill.  I next read in evidence page 21 of the book for the year 1882 of Butler County, Missouri, identified by the witness J. D. Greason, and particularly the following line, beginning at figure No. 716, 'To whom assessed."

"Mr. Curlee:  We object to that for reasons— similar reasons given to the foregoing objection.  Specifically this line, or lines about to be read from the entry, in the regular course of business, appears to be lot 2 of the southwest quarter and the south half of lot 2, northwest quarter.  There has been erased the words: 'Lot 2' and substituted in a different handwriting, in a different colored ink, by interlineation in lieu of lot 2, the figures 'E 1-2.'

"Mr. Hill: The land in suit, and the same writing: 'Paid by J. M Hodgen.'

"The Court:  Objection overruled.

"To which ruling of the court the defendant, by counsel, objected and excepted at the time."

A careful consideration of the salient facts of this case exclude any reasonable inference or presumption of law of the payment of taxes by any other claimants to the land than the railroad and its successors in title. The plaintiff acquired his quit claim deed a few days before his suit was instituted.  He had no knowledge of the non-resident grantor, other than the discovery of his name in the examination of abstracts.  He at once wrote for information to Illinois and finally got in communication with the seeming title holder in Arkansas, from whom he obtained the quitclaim.  He

never knew of any payment of taxes by any one who preceded him in the chain of title, was never provided with any tax receipts. The land itself was little more than a quagmire prior to 1906. In these circumstances and the clear and satisfactory evidence of continuous payment of the taxes by the parties in the line of defendants' title for over thirty-two years, we do not see how any doubt could exist as to the non-payment of any such taxes during the same period by the plaintiff or his predecessors in title. The only effort to rebut the case made by defendants was a production of the two leaves from the tax book, of insufficient probative force to overcome the clear inference of the failure of plaintiff or his grantor to pay, arising on the undisputed evidence given by defendants. While the thirty-year statute requires the party invoking it to show non-payment of taxes by the claimants of title, it does not intend that the evidence to support that negative shall be other or greater in degree than that which would generate belief in the minds of the triers of the fact. We think that quantum of proof in this case was sufficient to show by unavoidable inference that no taxes were paid on this land, either by plaintiff or those under whom he claims.

After a careful study of this record, we think the conclusion is clear that the title holders under whom plaintiff claims, completely abandoned the land; that they never paid any taxes thereon and that the immediate grantor of plaintiff was oblivious of any interest therein until he was ascertained by the inquiries which plaintiff set on foot, as he says, for "speculative purposes" after he had observed his name in an abstract and gotten into communication with him in Arkansas.

The result is that the judgment is reversed. All concur, *Woodson, J.,* in result.