## MARY ALICE REGAN et al., Appellants, v. WILLIAM ENSLEY.

### Division Two, June 25, 1920.

1. **HOMESTEAD: Favorite of Courts.** The salutary intent of homestead laws should not incline courts to extend them beyond the plain purpose of their enactment.

2. ————: **Estates.** The widow has a conditional life estate in her husband's homestead, and his minor children an estate for years terminable as they respectively reach legal majority.

3. ————: **Devise By Husband.** The words of the homestead statutes do not prevent the householder from devising the homestead to his widow for life with remainder to certain of his adult children to the exclusion of others.

4. ———: **Conveyance: Vesting of Title in Heirs.** The plain purpose of the words of the statutes that "the husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever" and that upon the death or remarriage of the widow it "shall pass to the heirs of the husband" was to preserve a home for the householder's widow during her widowhood and for his children during their minority, and they were not meant to be words controlling devolution of estates. They do not mean that, there being no minor children, the husband cannot by will devise the homestead to his wife for life and the remainder to certain preferred adult children, to the exclusion of others.

5. ———: ———: **Without Wife Joining: Acquiescence.** The proviso to the statute (Sec. 5435, R. S. 1909) that "nothing herein contained shall be so construed as to prevent the husband and wife jointly conveying, mortgaging, alienating or in any other manner disposing of such homestead or any part thereof" refers by strict construction to the preceding words "conveying and mortgaging," and not to the husband's power of alienation by devise; and besides, the acceptance by the widow of a devise of the homestead to her for life is a joining in the will as far as she is capable of doing so.

Appeal from Montgomery Circuit Court.—*Hon. E. S. Gantt*, Judge.

AFFIRMED.

*Claude R. Ball* for appellants.

(1) The evidence shows clearly that the property in suit, was the homestead of Solomon Ensley and his wife, Rebecca Ensley. He died April 30, 1896. The Homestead Law of 1895, page 185 was in force at the time of his death, and is the same as Secs. 3613, 3620, R. S. 1899. (2) The only question for decision is, could Solomon Ensley lawfully convey in fee simple his homestead to his wife for life and at her death to his son, William Ensley, there being no minor children? We insist that under Secs. 3616, 3620, R. S. 1899, he could not do so, and that such will in so far as it attempts to convey or devise the homestead to his wife for life and to his son in fee, is null and void. (3) Rebecca Ensley, the widow (who

died March 4, 1917) was not required to renounce the will, or file her election. The homestead was of less value than $1,500. The homestead law makes no rule or provisions requiring election or repudiation. Stoepler v. Silberberg, 220 Mo. 270; Bogart v. Bogart, 138 Mo. 427. The rights of Solomon and of the widow were fixed and accrued under the Homestead Law of 1895, which expressly provides to whom the homestead shall pass on the death of the householder; in this case, to the widow, and upon her death, to the heirs of the husband. (4) The husband cannot dispose of his homestead by will, because the homestead law governs its disposition and not his will. Where such housekeeper dies leaving a widow the homestead "is as much exempt from the operation of the will of the deceased head of the family, as it is from sale for the payment of his debts; it is out of his power by will to deprive the widow and children of it; for the law makes its own disposition of such estate." Rockhey v. Rockhey, 97 Mo. 79; Kaes v. Gross, 92 Mo. 659; Kleimann v. Gieselmann, 114 Mo. 444; Schorr v. Etling, 124 Mo. 42; Ball v. Ball, 165 Mo. 312; Armor v. Lewis, 252 Mo. 578. (5) The moment that the Act of 1895 went into effect, Solomon Ensley was bound by it, and was debarred from and incapable of disposing of his homestead either by deed or will, unless his wife Rebecca joined therein. "Under the Act of 1895 a husband cannot convey his homestead unless his wife joins in the conveyance." Bushnell v. Loomis, 234 Mo. 371. (6) Sec. 3616, R. S. 1899, clearly states that any conveyance of the homestead by the husband alone is null and void. Had Solomon deeded the homestead to his wife Rebecca for life, and at her death to pass in fee simple to his son, William, such a deed under this section would be null and void. It stands to reason that if he could not deed his homestead without his wife joining in the deed, he could not pass it to his son by will. Growney v. O'Donnell, 272 Mo. 167. And had Solomon deeded the homestead as suggested, and he had outlived his wife, the deed would be void as to him, and

would not pass any title.   Martin v. Herrington, 73 Vt. 193;   White v. Spencer, 217 Mo. 252.

*W. C. Hughes* for respondents.

(1) That the husband, without the joinder of his wife, cannot alienate the homestead or impose a burden on its enjoyment, is too clear for comment;   but that he may sell the land subject to all homestead rights of a non-joining wife is uncontrovertible in reason and under a correct construction of our statutes.   Fields v. Jacobi, 181 S. W. 68;   Stephens v. Stephens, 183 S. W. 574. (2) Prior to the Act of 1895, it is beyond dispute that the husband could sell or incumber the homestead, subject to the wife's inchoate right of dower, without the wife joining with him, except where the wife had filed her claim as provided by Sec. 5435, R. S. 1889.   Greer v. Major, 114 Mo. 145;   Rucker v. Wells, 111 Mo. 399; Kopp v. Blessing, 121 Mo. 391;   Markwell v. Markwell, 157 Mo. 326;   Gladney v. Sydnor, 172 Mo. 318.   (3) The homestead law is not for the benefit of adult children; it is for the benefit of the wife and minor children.   In this case there were no minor children.   At the date of the death of Solomon Ensley, no one was interested in the homestead except his wife.   Solomon did not take from her, or attempt to take from her, the homestead right;   instead of alienating it, he enlarged it to a life estate.   (4) In the case of Armor v. Lewis, relied upon by appellants, as in fact all cases of like holding, the question involved was the forced alienation of the homestead.   This court has never held that a will or deed of the owner, enlarging the homestead right in the wife to a life estate, and devising or conveying the fee to an adult child, is an alienation within the meaning of the homestead law.

WALKER, C. J.—This is a suit to partition certain town lots in New Florence, Montgomery County.   Mary Alice Regan and Sarah Anderson, appellants, and William Ensley, respondent, are the children of Solomon and

Rebecca Ensley, through whom appellants claim title by descent as tenants in common to the lots in question. A trial in the circuit court resulted in a finding that appellants had no title to the property and that the fee in same was in the respondent. From the judgment rendered thereon appellants have prosecuted this appeal.

Solomon Ensley died testate in April, 1896, seized in fee of the lots, which at the time he occupied with his wife as a homestead. The pertinent portions of his will are as follows:

1st. I give and bequeath to my beloved wife, Rebecca Ensley, all the real estate and personal property I may have or own at the time of my death to have and to hold and use during her lifetime and at her death all of such real estate to descend to my son, William Ensley, to have and to be held and owned by him in fee simple to use and dispose of as he may see proper.

"2nd. I give and bequeath to my two daughters, Sarah Anderson, the wife of Thomas Anderson, and Alice Regan, the wife of Jeff Regan, each the sum of ten dollars to be paid to them out of my personal estate or by my son, William Ensley, and in the event my son, William Ensley, pays to my two said daughters the said sums of ten dollars then and in that event it is my will and desire that my son, William Ensley, shall fall heir to any and own all of my personal estate which may remain in existence at the time of the death of my said beloved wife which has not been disposed of by her for use and support."

Rebecca, relict of Solomon, continued after his death to occupy the premises not only during her widowhood, but after her marriage to one Austin and until her death in March, 1917.

The authority of the testator to devise the lots which constituted his homestead is the matter at issue. The applicable statute is the amendatory act of the homestead laws (Laws 1895, p. 185) in force at the time of the testator's death. [Balance v. Gordon, 247 Mo. l. c. 131.] Sections 6704 and 6708, Revised Statutes 1909, are in no material features different from the rele-

vant portions of the Act of 1895, which in the first section prescribes the limitations upon the right of the disposal of a homestead as follows:

"Sec. 5435. The homestead of every housekeeper or head of a family, consisting of a dwelling-house and appurtenances, and the land used in connection therewith, not exceeding the amount and value herein limited, which is or shall be used by such housekeeper or head of a family as such homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and execution, except as herein provided; such homestead in the country shall not include more than one hundred and sixty acres of land, or exceed the total value of fifteen hundred dollars; and in cities having a population of forty thousand or more, such homestead shall not include more than eighteen square rods of ground, or exceed the total value of three thousand dollars; and in cities having a population of ten thousand and less than forty thousand, such homestead shall not include more than thirty square rods of ground, or exceed the total value of fifteen hundred dollars; and in cities and incorporated towns and villages having a population less than ten thousand, such homestead shall not include more than five acres of ground, or exceed the total value of fifteen hundred dollars. The husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void: *Provided,* however, that nothing herein contained shall be so construed as to prevent the husband and wife from jointly conveying, mortgaging, alienating or in any other manner disposing of such homestead, or any part thereof."

And in the second defines the manner in which such homestead shall pass and vest, as follows:

"Sec. 5439. If any such housekeeper or head of a family shall die, leaving a widow or any minor children, his homestead to the value aforesaid shall pass to and vest in such widow or children, or if there be both, to

such widow and children, and shall continue for their benefit without being subject to the payment of the debt of the deceased, unless legally charged thereon in his lifetime, until the youngest child shall attain its legal majority, and until the death of such widow; that is to say, the children shall have the joint right of occupation with the widow until they shall arrive respectively at their majority, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her death or remarriage it shall pass to the heirs of the husband; and the probate court having jurisdiction of the estate of the deceased housekeeper, or head of a family, shall, when necessary, appoint three commissioners to set out such homestead to the person or persons entitled thereto.''

Under these statutes appellants contend that the inhibition therein upon the alienation of a homestead, whether by devise or otherwise, is absolute; and upon the death of the testator a life estate in the property vested in his widow with a vested remainder in the parties hereto, appellants and respondent, which ripened into a fee upon the death of the widow.

While homestead laws are purely statutory in their origin, their salutary intent is such as to incline the courts to uniformly construe them with great liberality. Such construction, however, should not extend beyond the plain purpose of their enactment as evidenced by the usual and obvious meaning of the words employed or dispense with the necessity of parties bring themselves within the spirit and purpose of the laws unaided by judicial construction. [Dalton v. Simpson, 270 Mo. l. c. 300; Keeline v. Sealy, 257 Mo. 498; Sperry v. Cook, 247 Mo. 132; Hines v. Duncan, 79 Ala. 112, 58 Am. Rep. 580; Fred v. Bramen, 97 Minn. 484, 114 Am. St. 740; Charless v. Lamberson, 1 Iowa, 435, 63 Am. Dec. 457.]

Mindful of these rules, the meaning of the statute as applied to the facts at bar should not be difficult of determination. That the homestead interest upon the death of the husband vests as a conditional life estate

in the widow we have repeatedly held. [Bushnell v. Loomis, 234 Mo. 371; Snodgrass v. Copple, 203 Mo. 480; Hufschmidt v. Gross, 112 Mo. 649; West v. McMullen, 112 Mo. 405; Rhorer v. Brockhage, 86 Mo. 544.] In this far, therefore, no question can arise as to the correctness of appellants' contention. That one of the conditions under the statute on which the widow's estate was terminable, viz., her marriage, need not concern us, as it did not the parties hereto. She continued in the possession and occupancy of the premises thereafter until her death, and if any conclusion is to be drawn as to the character of her tenure after her marriage it is that thenceforth she was holding under the will and not under the statute. In any view of this phase of the facts it cannot affect appellants' title.

A further provision of the statute is that the children of a householder or head of a family shall upon his death use and occupy the homestead jointly with his widow during her tenure and thereafter until each of such children reaches its legal majority. The effect of this statute is to create in said children an estate for years terminable upon each reaching full age as stated. This provision has no application here. Each of the children, the parties to this proceeding, had reached full age at the time of the death of their father, Solomon Ensley. This provision may therefore be dismissed from consideration, except as to the effect its elimination may, as contended by appellants, have upon the determination of their title. Appellants' contention in this regard is that under the first section of the act (1895) the husband is debarred from alienating the homestead in any manner whatever; and under the second section of the act, there being no minor heirs and the life estate of the widow having terminated with her death, that the fee in said property vested in appellants under the provision that "it shall pass to the heirs of the husband." This conclusion necessitates a literal and mandatory construction of the statute and it remains to be determined if it is in harmony with the rules of interpretation applicable hereto and as a con-

sequence comports with the spirit and purpose of this character of legislation. We have repeatedly held that the nature of the homestead law is benign and its purpose the protection of the widow and minor children from the vicissitudes of fortune when they have been bereft by death of the strong arms and helpful hands of the husband and father. He, therefore, in whose kindly mind this statute had its origin, framed it in comprehensive terms with a mandatory meaning that its beneficient purpose might not be thwarted and the objects of its tender care thus deprived of its protection.

From the nature of a will as contradistinguished from a conveyance of real property, Rebecca Ensley cannot be said to have joined therein with her husband in such manner as is contemplated by the statute to render the alienation valid (Sec. 5435, supra). This portion of the statute must, in our opinion, from its terms, be held to have a more specific reference to conveyances than to wills. So far, however, as it was possible for her to join in the will she did so. Not that any overt act of hers was necessary at the time of the death of her husband to complete her investiture of title, because the homestead comprised all of the real property of the estate and did not exceed the value of this interest. Being in possession she continued therein and while her right and title to the property terminated in law upon her remarriage, her peaceful possession continued until severed by death. This attitude, although not determinative, affords persuasive support to the conclusion that while not joining in the will, which as we have indicated, was not possible, she at least acquiesced in its provisions in accepting and enjoying the extended tenure if afforded. We are not, however, and we should not be, limited to persuasive reasoning in determining the propriety of the husband's will. The statute itself and the purpose of its enactment, interpreted in the light of the rules stated, should furnish the safest measure as to its meaning.

283 Mo.—20

The huband's alinenation by devise in no wise injuriously but rather beneficially affected the widow's use and occupancy of the property. She took a life estate coupled with a condition under the statute, and a like estate free from a condition under the will. Her last estate was therefore better than her first.

It being apparent that the disposition of this property by the testator in his will helped rather than hurt the beneficent purpose of the law, we are of the opinion that the inhibition therein in regard to alienation as here exercised has not been violated. While it is true that a mandatory statute should as a general rule be literally construed and strictly applied, this rule becomes inoperative when its application will limit, if it does not destroy, the purpose of the act being construed. There is nothing in our ruling in Rockhey v. Rockhey, 97 Mo. 76, which militates against this conclusion. We simply held there that a husband could not by a will deprive his widow and minor children of their homestead right in his estate. This is consonant with the purpose of the homestead law, but furnishes no precedent for the determination of the matter at issue. Here there are no minor children and the widow had no cause of complaint and made none.

The ruling of this court in Kaes v. Gross, 92 Mo. 1. c. 659, to the effect that it is out of the power of a husband to devise the homestead, as much so, as by his sole deed to convey or mortgage it, was under a statute (Sec. 2693, R. S. 1879) which excepted a homestead out of the law relating to devises. This exception was eliminated by the amendment of Section 2693 in 1895 (Laws 1895, p. 186). Moreover, the above conclusion, reached in the Kaes-Gross case, was in Greer v. Major, 114 Mo. 1. c. 155, declared to be *obiter* and expressly overruled.

All that was decided in Schorr v. Etling, 124 Mo. 1. c. 46, and cases cited, pertinent to the matter at bar was that a widow cannot by the will of her husband be deprived of rights secured to her under the Law of 1875, and that the homestead passes to the widow by operation

of law and is expressly excepted from the operation of the will of her husband. This ruling, as stated in refer-. ence to the Kaes-Gross case, was under the Law of 1875 and has since been eliminated from the statute by repeal. These cases, therefore, are fallen timber so far as concerns the matter here seeking solution.

A further ruling is made in the Schorr-Etling case as to the Homestead Law of 1865 concerning the widow's right of election which is not relevant in the determination of the instant case; nor is anything in Ball v. Ball, 165 Mo. 312, which construd a will under the Law of 1865, or in Armor v. Lewis, 252 Mo. 568, construing the Homestead Law of 1895, decisive of the question here demanding solution.

The foregoing are all of the cases cited by appellants in support of their contention. It is apparent that they fall short of accomplishing this purpose.

There is no dearth of technical reasons based purely upon the canons of construction to sustain the conclusion we have reached herein. The language of that portion. of the statute (Sec. 5435, supra) under discussion is as follows: "The husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever," etc. A rule of construction provides that where general words follow particular words, the former will be construed as applicable only to persons or things of the same nature or class as the latter; or, as we have stated it, "general words do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms. [State ex rel. Pike County v. Gordon, 268 Mo. 321.] In the application of this rule to the statute quoted the meaning of the general word "alienation" may properly be restricted to that embodied in the particular words "selling" and "mortgaging."

A like construction may be given to that portion of the proviso of the same section that "nothing herein contained shall be construed to prevent the husband and wife from jointly conveying, mortgaging, alienating or in

any other manner disposing of such homestead or any part thereof.'' As we have shown, there could not well be a joint alienation by devise and the framers of the law evidently did not so intend. The reasonable construction of this proviso, therefore, is that such a joint alienation was authorized as is expressed by the words ''conveying or mortgaging'' and that the word ''alienating'' should be restricted in its mening to that given to the preceding words, while the words ''or in any manner disposing'' may be construed as suppletory. Thus interpreted, the husband's power of alienation by devise is not prohibited by the statute. In the application of this rule the purpose of the homestead law is not to be lost sight of. This necessitates a modification of the foregoing rule of construction which, while not prohibiting alenation by devise, limits the exercise of same to cases where the rights of the widow and minor children are not thereby affected.

Our rulings in Ball v. Ball, supra, and in Wetzel v. Hecht, 281 Mo. 610, while not precedents decisive of the instant case on account of a difference in the issues, nevertheless recognize the right of the husband to alienate the homestead by devise where the spirit and purpose of the law is not thereby violated. Of such is the instant case.

The right of alienation having been established under the facts at bar, the ruling of the trial court was not error and its judgment should be affirmed. It is so ordered. All concur.