ANNA K. HALL v. PORT HALL, MARTHA HALL, LOUWILLA MCREYNOLDS, and HARRY MCREYNOLDS, Appellants.—145 S. W. (2d) 752.

Division One, December 11, 1940.

*Walter M. Hilbert* and *Otto P. Shanks* for appellants.

1218

*William E. Stewart* and *Harry S. Rouse* for respondent.

BRADLEY, C.—This cause is to determine title to real estate in Lewis County. The court found that plaintiff was the owner and defendants appealed.

It is, in effect, conceded that prior to June 16, 1933, Will Hall, deceased, owned the land, and had, with his family, lived on it for many years. His first wife, Lonnie, died June 11, 1924. Their children are defendants Port Hall and Louwilla McReynolds. Defendant, Martha Hall, is the wife of Port, and Harry McReynolds is the husband of Louwilla. March 6, 1926, and immediately prior to their marriage, Will Hall and plaintiff, who was then Anna L. Kell, entered into an antenuptial contract by which each relinquished to the other all after-acquired marital rights in their respective properties. Paragraph (f) provided: ''In the event first party (Will Hall) predeceases second party (Anna L. Kell) then second party is to be paid the sum of $2,000 (two thousand dollars) from the estate of first party.''

June 16, 1933, Will Hall, by warranty deed, conveyed, for a recited consideration of $2,000, the land in question to his wife, Anna K., plaintiff, who did not join in the execution of the deed. The deed contained the following:

''Reference is herein made to a certain antenuptial. contract duly executed between grantor and grantee of this instrument. Said antenuption contract bears date of March 6th, 1926, and being immediately prior to grantor and grantee becoming husband and wife, and which status duly exists between them of the date of this instru-

1220

ment. Now in the event the *grantee* herein should *not* predecease the grantor herein as fully provided for in said antenuption contract then the title to the above described real estate shall fully revert back to the grantor herein, his heirs, administrators or assigns; otherwise this instrument is intended to convey complete fee simple title" (italics ours).

Will Hall died March 28, 1936. This cause was filed September 3, 1936, tried November 21, 1938, and judgment entered May 9, 1939.

Plaintiff alleged that she was the owner and in the possession of the land; that the word *not*, italicized in the paragraph, supra, from the deed, was a clerical error; that defendants claimed some interest in the land adverse to her, and asked that the title be determined.

Defendants denied that plaintiff had title; alleged that Lonnie Hall, deceased, first wife of Will, and the mother of Port and Louwilla, purchased and improved, with her own money, the lands in question; that the legal title was placed in Will Hall, but that he held as trustee for his wife, Lonnie; that at the time of the execution of the deed to plaintiff, the land in question was the homestead of Will Hall, the grantor therein, and that since plaintiff, the then wife of the grantor, did not join in the deed, said deed was "absolutely null, void and of no effect." Also, defendants denied that the word *not* was a clerical error.

In her reply plaintiff denied generally, and specifically denied the claims of defendants as to the land having been purchased, etc., by Lonnie Hall, but alleged that if such were the case, defendants were barred by the Statute of Limitations.

It was admitted that defendants, Port Hall and Louwilla McReynolds, were the only living children of Will Hall, and that they were over 21 years old on June 16, 1933, date of execution of the deed to plaintiff, and that neither of them lived on the land. There was no evidence offered to support the allegations in the answer that the land was purchased, developed, etc., by Lonnie Hall, but it is, in effect, conceded that the land was the homestead of Will Hall.

Mr. Noah W. Simpson, an attorney, drew the antenuptial contract and made a pencil draft of the paragraph, supra, from the deed, and gave this draft, for insertion in the deed, to the notary who prepared the deed. Mr. Simpson testified that the italicized words *grantee* and *grantor*, in the paragraph, supra, from the deed, were *transposed* as compared to the position of these words in the draft he gave to the notary. The antenuption spelling and the transportation were likely due to the scrivener's inability to accurately read Mr. Simpson's writing. Mr. Simpson, when on the stand, said that his handwriting was "mighty poor."

This cause was not argued orally, and defendants, appellants here, make no written argument, but in their brief say that (1) "it is the well settled law of this State that any conveyance of the homestead

tract of land or part of it by the husband alone is not only void as to the wife and children, but also as to the husband, . . . and (2) that it is the rule in equity suits to correct a written contract on the ground of mistake that the burden is cast upon the party asserting the mistake to overthrow by evidence that is clear and convincing the prima facie presumption that the contract exhibits the ultimate agreement of the parties, and of showing that the mistake was mutual.''

As supporting the proposition that the conveyance of the homestead was void, defendants rely on Sec. 608, R. S. 1929, 6 Ann. Stat., p. 4221; Haines v. Carroll, 327 Mo. 1026, 38 S. W. (2d) 1047; Growney et al. v. O'Donnell et al., 272 Mo. 167, 198 S. W. 863; Bushnell et al. v. Loomis et al., 234 Mo. 371, 137 S. W. 257.

Section 608, among other things, provides that ''the husband shall be debarred from and incapable of selling, mortgaging or alienating the homestead in any manner whatever, and every such sale, mortgage or alienation is hereby declared null and void: *Provided, however,* that nothing herein contained shall be so construed as to prevent the husband and wife from jointly conveying, mortgaging, alienating or in any other manner disposing of such homestead, or any part thereof.'' The Haines case, supra, was for specific performance of a contract made by the husband, wife not joining, for the sale of a small strip from the homestead for a private road. Specific performance was refused. In the opinion, the court cited and reviewed the Growney and Bushnell cases, supra, and other cases, and held (327 Mo. 1026, 38 S. W. (2d) l. c. 1049) that it is ''the settled law of this State that any conveyance of the homestead tract of land or part of it by the husband alone is not only void as to the wife and children, but also as to the husband.'' To the same effect is Gum v. Wolfinbarger, 338 Mo. 968, 93 S. W. (2d) 667. These rulings are based on the statute, but plaintiff contends that, in the situation here, there was no *alienation* of the homestead within the meaning of Sec. 608.

Regan et al. v. Ensley, 283 Mo. 297, 222 S. W. 773, was in partition. The plaintiffs, Mary Alice Regan and Sarah Anderson, claimed as tenants in common with their brother, William Ensley, defendant. The land was the homestead of Solomon Ensley, father of plaintiffs and defendant. Solomon died testate. His will devised the land to his wife for life, remainder to his son, the defendant. It was contended that the devise of the homestead was void under the statute, now Sec. 608. It was held that the devise of the homestead to the wife for life was not prohibited by the statute. The court said (283 Mo. 297, 222 S. W. l. c. 775): ''It being apparent that the disposition of this property by the testator in his will helped rather than hurt the beneficent purpose of the law (homestead), we are of the opinion that the inhibition therein in regard to alienation as here exercised has not been violated.''

■ "The policy of those statutes which restrain the alienation of the homestead without the wife joining in the deed is to protect the wife, and to enable her to protect the family, in the possession and enjoyment of a homestead, after one has been acquired by the husband. They are not intended to interpose obstacles in the way of a conveyance of the homestead to the wife, or to the wife and children, with the consent and approval of the wife, whatever may be the form of such conveyance." [Thompson's Homestead and Exemptions, sec. 473.]

It is stated in 26 Am. Jur., p. 92, sec. 144, that "for the most part, the authorities hold that a purported conveyance of homestead property by husband to wife is effectual although it is not joined in by the wife, the view being taken that the transaction is not an alienation of the property within the purview of the statute, because the homestead rights of the parties for whose protection the statute was enacted are not affected, that the act refers only to conveyances to third persons, and that joinder in such circumstances is an absurd and idle ceremony." [See also 13 R. C. L., p. 1377, sec. 425, Beedy v. Finney et al., 118 Iowa, 276, 91 N. W. 1069; Bassett et al. v. Powell et al., 178 Ala. 340, 60 So. 88; 45 A. L. R. (Ann.), p. 410.]

Section 612, R. S. 1929, 6 Ann. Stat., p. 4227 provides, among other things, that "the children of the deceased (homesteader) shall have the joint right of occupation (of the homestead) with the widow until they shall arrive, respectively, at the age of twenty-one years, and the widow shall have the right to occupy such homestead during her life or widowhood, and upon her remarriage or death *it shall pass to the heirs of the husband*" (italics ours).

■ Prior to the death of the homesteader, his children, adult or minor, have no *vested* interest in the land constituting the homestead, but if the homesteader die, seized of the homestead, his widow becomes *vested* with a life estate therein, terminable upon marriage, and the minor children become *vested* with an estate for years, terminable upon arriving at the age of 21 years. [Moore v. Mansfield et al. (Mo.), 286 S. W. 353, l. c. 355; Brewington et al. v. Brewington et al., 211 Mo. 48, l. c. 56, 109 S. W. 723.] And in addition to these estates, coming into existence upon the death, intestate, of the homesteader *seized* of the homestead, the *remainder* estate in the land constituting the homestead vests in his heirs, Sec. 306, R. S. 1929, 1 Ann. Stat., p. 194, but possession is postponed until the expiration of the homestead estate or estates.

■ We think that sound reason impels the conclusion that the deed to plaintiff, in the present case, was not an *alienation* of the homestead within the meaning of Sec. 608. The question then is: What *estate*, if any, did the deed convey? The antenuptial contract provided that plaintiff would be paid $2,000 "from the estate" of her husband as a consideration for her release of all her marital rights

in his property. It is true that the $2,000 was to be paid from the husband's estate, but if he chose to discharge it during his life, and the inference is he did, we know of no law that would prevent.

Even before the enactment, in 1889 (Sec. 6864, R. S. 1889) of what is now Sec. 2998, R. S. 1929, 7 Ann. Stat., p. 5055, a part of the married woman's act, and relating to the *femme sole* status of the wife, a conveyance of land by the husband to his wife vested in the wife equitable title thereto. The legal title remained in the husband, but in trust for the wife, and upon his death, during her life, the legal title, under the statute of uses (Sec. 3103, R. S. 1929, 3 Ann. Stat., p. 1926), vested in the wife. [Carson v. Berthold-Jennings Lumber Co., 270 Mo. 238, 192 S. W. 1018. See also, Turner v. Shaw, 96 Mo. 22, 8 S. W. 897; Small v. Field, 102 Mo. 104, 14 S. W. 815; Crawford et al. v. Whitmore et al., 120 Mo. 144, 25 S. W. 365; Pitts v. Sheriff, 108 Mo. 110, 18 S. W. 1071; Stark et al. v. Kirchgraber, 186 Mo. 633, 85 S. W. 868.] And the same rule of law obtained, even though the land conveyed by the husband to the wife constituted the homestead. [Sorrell et al. v. Bradshaw (Mo.), 222 S. W. 1024.]

Since the married woman's act, a direct and unconditional conveyance of land by a husband to his wife, passes to the wife the husband's interest, except as to his marital rights. [Friedel et al. v. Bailey et al., 329 Mo. 22, 44 S. W. (2d) 9, l. c. 14, and cases there cited.] In the present case it is quite clear that the antenuptial contract and the deed are tied into each other, so to speak, and it is equally clear that the paragraph in the deed referring to the contract was intended to be the same, in effect, as the comparable paragraph in the contract, that is, if the wife predeceased the husband, then the title would revert to the husband. It follows, therefore, that the deed conveyed a base or conditional fee, which became absolute upon the husband's death. [See Tebow v. Dougherty et al., 205 Mo. 315, l. c. 325, 103 S. W. 985.]

The trial court found that plaintiff was the owner in fee, but made no specific reformation of the deed. The effect of the decree would eliminate the word *not* or transpose the italicized words *grantee* and *grantor* in the paragraph, supra, and thus leave it as drafted by Mr. Simpson.

The judgment should be affirmed, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.