Mason SCHUBEL, Administrator of the Estate of Emma W. Bonacker, Deceased, Appellant,

v.

Kenneth BONACKER, Administrator of the Estate of G. Ernest Bonacker, Deceased, Respondent.

No. 47178.

Supreme Court of Missouri,

Division No. 2.

Jan. 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 8, 1960.

Dearing, Richeson & Weier, Samuel Richeson, Hillsboro, for appellant.

Thurman, Nixon & Blackwell, Earl R. Blackwell, Hillsboro, for respondent.

STOCKARD, Commissioner.

G. Ernest Bonacker died testate on February 28, 1956, leaving no issue. He was survived by his widow, Emma W. Bonacker, who died April 26, 1956, without applying for a homestead allowance pursuant to Section 474.290 (all statutory references are to the 1955 Probate Code of Missouri in effect at the time of testator's death. Laws of Missouri 1955, p. 385 et seq. and V.A.

M.S.). Thereafter, but prior to the expiration of the time for filing claims against the estate of G. Ernest Bonacker, the administrator of the estate of Emma W. Bonacker, (hereafter referred to as appellant) applied for a homestead allowance and also filed a petition for the construction of the will of G. Ernest Bonacker. The trial court disallowed the claim for homestead allowance and construed at least two provisions of the will adversely to the contention of appellant and he has appealed.

Section 474.290 provides for an allowance "to the surviving spouse or unmarried minor children of an amount not exceeding fifty per cent of the value of the estate," exclusive of certain property, not to exceed $7,500 to be known as a "homestead allowance." This allowance is "the absolute property of the surviving spouse, if any; otherwise it shall be the absolute property of the unmarried minor children in equal shares," and it is "in lieu of all dower and homestead rights" in the land of a decedent.

Section 474.300 is as follows: "When a surviving spouse dies, or if an unmarried minor child dies, marries or comes of age, no allowance shall be made under section 474.260 for his maintenance for any period after such death, marriage or coming of age. When a surviving spouse dies without having received the homestead allowance, it may be paid (if it has been allowed but not paid) or may be allowed (if not already deemed waived) to the unmarried minor children. If an unmarried minor child entitled to homestead allowance, dies, marries or comes of age before his homestead allowance has been made, and within the time for applying for it, he shall not be entitled to such allowance, but if he dies, marries or comes of age after it has been allowed but before it was paid, he shall be entitled to it."

In this case the surviving spouse died before the homestead allowance was either allowed or paid, and there were no unmarried minor children. Appellant contends that Section 474.290 creates the right to homestead allowance, and that Section 474.-300 does not expressly provide that when the surviving spouse dies before payment is made of the homestead allowance, and there are no unmarried minor children, the payment shall not be made to the estate of the surviving spouse. He argues that "at best, the statute is silent as to that question."

In Owen v. Riffie, Mo.Sup., 323 S.W.2d 765, 769, it was stated that "The right of homestead is of American origin. Its purpose is to provide shelter and protection for the respective heads of the family and their unmarried minor children beyond the reach of creditors or financial misfortune. It is founded upon public policy in the interest of humanity." It is readily apparent that none of these purposes would be served by the payment of the homestead allowance to the estate of a surviving spouse. The homestead allowance is in lieu of dower and the former homestead rights and neither dower nor the former homestead rights survived the death of the surviving spouse. Dower was an interest for life only, and by reason of the homestead rights the widow became vested with a life estate terminable upon remarriage. Hall v. Hall, 346 Mo. 1217, 145 S.W.2d 752; 40 C.J.S. Homesteads § 276. See also the thorough article pertaining to the history of homestead rights in 6 Missouri Law Review at p. 80.

" 'It is so elementary as to require no citation of authority that the basic rule of construction of an ordinance or statute is to first seek the lawmakers' intention, and if possible to effectuate that intention.' " Owen v. Riffie, supra. Section 474.300 does not specifically provide for the payment of the homestead allowance under the circumstances of this case, and when we consider the purpose of he homestead allowance together with its historical background, we necessarily reach the conclusion that it was the intention of the Legislature to provide that the homestead allowance may be al-

lowed and paid to the surviving spouse upon application, when not waived, but if he or she dies before payment, whether or not previously allowed, then the homestead allowance shall be paid, or shall be allowed and paid if not waived, to the unmarried minor children, if any, and if there are none, as in this case, then the estate shall not be charged with the payment of a homestead allowance. The trial court correctly denied payment of a homestead allowance to appellant.

■ We turn now to the construction of the terms of the will. It contained no residuary clause, but it purported to dispose of certain property by specific bequest. Therefore, G. Ernest Bonacker died intestate as to property owned by him at his death and not disposed of by the will. 96 C.J.S. Wills § 1225. The portions of the will which are material to the remaining issues on this appeal are as follows:

"I, G. E. Bonacker, * * * do hereby bequeath * * * my property to the following named persons to-wit:

"To Kenneth Bonacker & Matilda Bonacker his wife,

* * * * * *

"[b] $10,000.00 in bank stock of the Industrial Bank of St. Louis Mo and its accumilations.

* * * * * *

"[d] $1000.00 First National Bank of Tulsa, Oka. and its accumilations.

"[e] $6500.00 Industrial Securities of Axeholcome of Jersey City N. Y. and its accumilations.

"[f] $1512.00 in the First National Bank of St. Louis Mo. shall go to Emma W. Bonacker * * *."

■ The testator did not own any stock in the Industrial Bank of St. Louis, Missouri. In fact, none of that stock was issued for sale to the public. However, at the time of his death, he did own 500 shares of stock of Industrial Bancshares Corporation and 745 shares of stock of the General

Contract Corporation. The trial court found that "the stock of the Industrial Bank of St. Louis, as mentioned in said will, was intended by the testator to be Industrial Bancshares Corporation stock which the testator owned at the time of executing the will, and that subsequent to the writing of the will, the corporate name was changed to General Contract Corporation; and that all of the Industrial Bancshares Corporation stock and the General Contract Corporation stock now held in said estate, resulted and exists by virtue of stock splits and dividends from the original purchase of 500 shares of Industrial Bancshares Corporation stock, and that following the intent of the testator, all of said stock shall go to Kenneth Bonacker and Matilda Bonacker, his wife." Appellant's position is that as to the shares of stock of the Industrial Bancshares Corporation and General Contract Corporation, G. Ernest Bonacker died intestate.

The evidence discloses that on May 14, 1947, the testator purchased 500 shares of stock in the Industrial Bancshares Corporation. The purchase price is not shown, but on June 11, 1948, the date of the execution of the will, the market price of that stock was $9,500. On November 17, 1950, Industrial Bancshares Corporation changed its name to General Contract Corporation, but the outstanding stock was not called in and reissued in the new name. On December 1, 1950, by reason of a "stock split" 500 shares of stock in General Contract Corporation were issued to testator. Subsequent to that time several stock dividends were declared. The evidence does not disclose the circumstances pertaining to the issuance to testator of all the inventoried stock of General Contract Corporation, but on this appeal appellant does not challenge the finding of the trial court that all of such stock in the estate resulted from stock splits and dividends from the original 500 shares of Industrial Bancshares Corporation.

There was a corporation by the name of Industrial Bank of St. Louis, but all of its

issued stock, other than qualifying shares, was owned by Industrial Bancshares Corporation, a holding company which also owned the stock of "six or seven" banks and of some insurance and finance companies. The stock of the Industrial Bank of St. Louis constituted about 40 per cent of the total holdings of the parent corporation. In 1950 the name of the bank was changed to the Bank of St. Louis.

■ Section 474.430, Laws of Missouri 1955, § 272, V.A.M.S., provides that the courts "shall have due regard to the directions of the will, and the true intent and meaning of the testator." In determining the true intent and meaning of the testator we must look first to the will, and if the language therein is ambiguous we may look to the surrounding facts and circumstances. Lang v. Estorge, Mo.Sup., 242 S.W.2d 50. The language of the will pertaining to the gift of the stock in the Industrial Bank of St. Louis is not, of itself, ambiguous. It clearly provides that the testator bequeathed to Kenneth and Matilda Bonacker $10,000 in bank stock of the Industrial Bank of St. Louis. The meaning of this provision becomes doubtful, or ambiguous, only when facts not disclosed by terms of the will are considered, namely, that the testator did not and never did own any stock in the Industrial Bank of St. Louis. In other words, there is a latent ambiguity in the language used. Hand v. Hoffman, 8 N.J.L. 71; Annotation, 94 A.L.R. 46.

■■ "The general principle is well settled that extrinsic evidence is not admissible to vary, contradict, or add to the terms of a will, or to show a different intention on the part of the testator from that disclosed by the language of the will." Annotation, 94 A.L.R. at pages 31–32. But it is admissible to explain latent ambiguities in a will, and to show the true and correct intent of the words used. "It has been repeatedly held that, where doubt or uncertainty arises upon the reading of a will in its entirety, as to the true intention of the testator, parol evidence as to extrinsic facts and circumstances is admissible to explain patent or latent ambiguities in the language used therein. * * * It must be understood, of course, that such evidence is admissible solely for the purpose of arriving at the true intention of the testator from the language he used, and cannot be made to show that he really intended one thing when he said another, or to disclose an intention not expressed in the will itself, or to aid in making such a will as he evidently must have intended, but did not in fact make." In re Aiken's Estate, Mo.App., 5 S.W.2d 662, 664; See, also, Bond v. Riley, 317 Mo. 594, 296 S.W. 401; McMahan v. Hubbard, 217 Mo. 624, 118 S.W. 481; Gordon v. Burris, 141 Mo. 602, 43 S.W. 642; Annotation 94 A.L.R. at pages 46–55. It has expressly been held that where there is a latent ambiguity or inaccuracy in the description of the corporate stock, bonds or other securities, extrinsic evidence is admissible to identify the subject of the gift. Paulus v. Besch, 127 Mo.App. 255, 104 S.W. 1149; Waters v. Hatch, 181 Mo. 262, 79 S.W. 916; Annotation, 94 A.L.R. at page 163; 95 C.J.S. Wills § 641c. "This principle is most commonly illustrated by decisions involving stock described as being issued by a certain corporation, where it appears either that no corporation of that name existed, or, if it did, that the testator owned no shares therein. In such situation parol evidence is usually received to show that the testator intended to describe stock owned by him in some other corporation with a name similar to that mentioned in the will." 57 Am.Jur., Wills, § 1090.

We think it is clear from the evidence that by the bequest of stock in the Industrial Bank of St. Louis, the testator had reference to and intended to bequeath the stock, then worth approximately $10,000, owned by him in the Industrial Bancshares Corporation; that it was proper for respondent to show and establish this intent by extrinsic evidence; and that the ruling of the trial court in respect to this provision of the will was correct.

■ The next provision of the will in controversy is the bequest of "$6,500 Industrial Securities of Axeholcome of Jersey City, N. Y." The inventory does not show any stock issued by a company with this precise name, but it shows 374 shares of stock of "Axe-Houghton Fund A, Inc." with an inventoried value of $2,323.84. The purchase price is not shown. It was stipulated that this stock had been sold, apparently by agreement, for $4,196.28. No other evidence was offered, and we cannot determine the approximate value of this stock on June 11, 1948, the date of the execution of the will, and we do not know whether or not "Axe-Houghton" was located at Jersey City, New York. The trial court found that "stock in the Axe-Houghton Fund, Inc., and accumulations, will pass as a devise under the will to Kenneth Bonacker and Matilda Bonacker, his wife, under the description in the will of Industrial Securities of Axeholcome of Jersey City, New Jersey [the will said Jersey City, N. Y.]. The court finds that at least the first five letters of a most unusual name were used in the description of the securities in the will, and that the language used shows that the Axe-Houghton Fund, Inc., securities were intended by the testator."

We have previously determined that when there is a latent ambiguity in the description of corporate stock that extraneous evidence is admissible to show the correct and true intention of the testator. There was very little extraneous evidence upon which the trial court reached its conclusion, but the parties submitted the question to the trial court on the meagre evidence above set out, and on this appeal appellant has shown no reason why the conclusion reached by the trial court is wrong. The decision of the trial court is not patently wrong; the fragmentary extraneous circumstances do lend support to the decision; and we see nothing in the point in appellant's brief, or even in his argument thereunder, to justify a ruling here contrary to that of the trial court.

■ The third and last point is as follows: "Under paragraph D of the will the trial court held the stock passed. If so, then under the practically identical provision of paragraph F, certificate No. E10592 for 36 shares of capital stock of First National Bank of St. Louis should go to the Estate of Emma W. Bonacker. If either passes, the other should also; but if one does not, the other should not."

Paragraph D of the will bequeathed to Kenneth and Matilda Bonacker "$1000.00 First National Bank of Tulsa, Oka, and its accumilations." The judgment of the trial court was that "The court finds that stock in the First National Bank of Tulsa, Oklahoma, *by agreement of the parties hereto* and the order of this court, based upon the intent of the testator, will be divided with 65⅞ shares of stock going to Kenneth and Matilda Bonacker, his wife, and 49⅞ shares will be held to be intestate property of the deceased" (emphasis added). Paragraph F of the will was that "$1512.00 in the First National Bank of St. Louis Mo shall go to Emma W Bonacker." The trial court found that the deposit "was evidently withdrawn" between the time the will was executed and the testator's death, but "that this amount is to be paid to the Estate of Emma Bonacker, deceased, from any other cash in the estate to the extent that there is that amount available."

There is no merit to this point for several reasons. Appellant bases his contention of error solely on inconsistency. But the ruling of the court as to paragraph D was based on an agreement of the parties which obviously was a compromise because the bequest was either entirely valid or entirely void. Therefore, the contention that the ruling as to paragraph F was inconsistent with what the parties agreed to concerning paragraph D is of no merit whatever when it is not contended that the agreement included paragraph F. Also, paragraph D obviously referred to stock or other securities of the Oklahoma bank, but paragraph F obviously referred to a deposit, and even though that deposit was not in existence at

the death of the testator, appellant was awarded the equivalent sum of money. In now contending that paragraph F referred to the 36 shares of stock, appellant has not offered to surrender the award of $1,000 representing the deposit, and paragraph F could not refer to both.

Respondent's motion to dismiss the appeal for failure of appellant to comply with Supreme Court Rule 1.08, 42 V.A.M.S., is overruled, but in doing so we do not imply that the motion was totally without merit.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.